Morrison vs. The Phillips & Colby Construction Co.

MORRISON VS. THE PHILLIPS & COLBY CONSTRUCTION COMPANY.

RAILROADS: CARRIAGE OF HORSES: PLEADING: EVIDENCE. *(1) Complaint construed. (2) Limiting carrier's liability by contract. (3, 4) Evidence of shipper's consent to special terms. (5) Evidence of negligence.*

1. The complaint herein (for which see the case) is *held* to go upon defendant's negligence in causing injury to plaintiff's horses carried on defendant's railroad, and not upon any absolute liability of the defendant carrier as an insurer of the property.

2. A railroad company may, by express contract, limit its liability in the carriage of horses. *Betts v. F. L. & T. Co.,* 21 Wis., 80.

3. Possession by a shipper of a carrier's receipt for the property, containing special terms, is at least *prima facie* evidence of his assent to them, and in most cases may be conclusive.

4. Defendant's custom was to carry horses at the owner's risk, and at reduced rates for that reason; and the letters "O. R.," signifying "Owner's Risk," were upon the receipt given plaintiff for his horses, and retained and put in evidence by him; and he testified that "he did not *see*" those letters, but not that he did not *understand* their meaning. *Held,* that the restricted liability of the company clearly appears from plaintiff's evidence.

5. The injury was caused by the breaking of a wheel under a freight car in the train, which threw the car containing plaintiff's horses from the track. The track was in good order; the wheel had been used for only a short time, and, upon inspection after the accident, showed no flaw or defect; and there was no evidence, except the mere fact of its breaking, which tended to show negligence of the company. *Held,* that there was no error in directing a verdict for the defendant.

44 405 | 87 490
44 405 | 96 344
44 405 | 101 377
44 405 | 105 347
44 405 | 110 ²612
44 405 | 114 ⁵285
55 LRA 184

APPEAL from the Circuit Court for *Winnebago* County.

After certain averments as to defendant's corporate character, and its business as a common carrier, the complaint alleges, in substance, (4) That, at a time and place named, plaintiff delivered to defendant in good order, and defendant received as a common carrier, three horses and certain other property belonging to plaintiff, of a certain value; and that defendant then and there became bound by law, and undertook and promised plaintiff, to take care of said property, and safely carry it over the line of its road to a certain other station on said road, and there deliver it to plaintiff for a certain reasonable sum then and there paid by plaintiff to defendant therefor. (5) That defendant did not take due care of said property while so in its charge, nor safely carry and deliver it as aforesaid. (6) That while in defendant's care, and in the process of the carriage, said horses were greatly injured and deteriorated in value. (7) That they were so injured and deteriorated in value by reason of· defendant's negligence in the carriage thereof. (8) That, by reason of said injuries to the horses, they were lessened in value $200, and other injuries, specifically described, accrued to plaintiff, to his damage $372. Judgment is therefore demanded for $600.

The answer was, in substance, that plaintiff himself, at his own instance, loaded all said property in one car, and took and retained the possession and control thereof, at his own risk, during the transit, for the purpose of procuring reduced rates of freight, and thereby assumed all risk of damages to the property occasioned by such loading, control and possession; and that the horses were injured, if at all, by plaintiff's own fault.

The character and effect of the evidence will sufficiently appear from the opinion.

By direction of the court, a verdict was returned for the defendant; and from the judgment thereon the plaintiff appealed.

The cause was submitted for the appellant on the brief of *Gabe Bouck.* He argued, 1. That in the transportation of live stock, while the carrier is not an insurer against injuries arising from the nature and propensities of the animals, and which diligent care cannot prevent, yet as to damages arising from other causes, the liability is the same as in respect to other property. *Clarke v. Railroad Co.*, 14 N. Y., 570; *Penn v. Railroad Co.*, 49 id., 207; *Kimball v. Railroad Co.*, 26 Vt., 247; *Rixford v. Smith*, 52 N. H., 355; *S. & N. A. R. R. Co. v. Henlein*, 52 Ala., 606; Angell on Carriers, § 214. 2. That though a common carrier may by agreement limit its liability in respect to live stock to that of an ordinary bailee for hire (or perhaps refuse to carry), yet the limitation by notice, or in a receipt or contract, must be clear and explicit (Edwards on Bailm.; *Falvey v. North. Transp. Co.*, 15 Wis., 129); that the letters " O. R.," in the shipping receipt here, did not bind plaintiff unless brought to his knowledge; and that there was evidence upon which the question as to his knowledge should have been submitted to the jury. 3. That when the accident and injury were proven, the burden was on defendant to show that there was no negligence *(Spaulding v. Railway Co.*, 30 Wis., 110; *S. C.*, 33 id., 582; *Galpin v. Railway Co.*, 19 id., 604), and the question of negligence should have been left to the jury.

*L. S. Dixon*, for respondent, argued that two causes of action were joined in the complaint: one upon the strict common-law liability of common carriers, and the other for negligence. He further contended, 1. That, in the absence of any statute on the subject, railroads are not bound to carry live stock, and that they may receive and carry horses and cattle upon such terms and conditions as they may impose for their own protection, or as may be agreed upon by them and the shipper, except that they cannot relieve themselves from liability for negligence or misconduct. 2. That where the company does not hold itself out as a common carrier of live stock,

or contract to be liable as such, and the liability is not imposed by any statute, courts are divided upon the question whether the mere act of receiving and transporting carries with it the strict liability of the common law. 3. That the company, whether acting as a common carrier or not, in such a carriage, is not liable for injuries caused by the peculiar character and propensities of the animal carried. In support of these three propositions, counsel cited *Betts v. Farmers' L. & T. Co.*, 21 Wis., 80; *C. & N. W. Railway Co. v. Van Dresar*, 22 id., 511; *McDaniel v. Railway Co.*, 24 Iowa, 412; *Kansas Pac. Railway Co. v. Nichols*, 9 Kans., 235; *White v. Winnisimmet Co.*, 7 Cush., 155; *Rixford v. Smith*, 52 N. H., 355; *Mich. S. & N. I. R. R. Co. v. McDonough*, 21 Mich., 165; *L. S. & M. S. R. R. Co. v. Perkins*, 25 id., 329; *Clarke v. Railroad Co.*, 14 N. Y., 570; *Harris v. Railroad Co.*, 20 id., 232; *Penn v. Railroad Co.*, 49 id., 204; *Cragin v. Railroad Co.*, 51 id., 61; *Goldey v. Railroad Co.*, 30 Pa. St., 246; *G. W. Railway Co. v. Blower*, 2 Moak, 700; *Kendall v. L. & S. W. Railway Co.*, id., 705; *Nugent v. Smith*, L. R., 1 C. P. Div., 423; *S. C.*, 17 Moak, 330. 4. That upon plaintiff's own evidence he must be held to have contracted for a carriage at his own risk.

ORTON, J. This is an action for damages to the horses of the plaintiff, shipped on defendant's road at Waupaca, to be carried to Wauboo station, in January, 1877.

It is not pretended, and there is no evidence, that the injury to the horses was caused by the peculiarity or natural propensity of such animals; and therefore such a question, and the law applicable to it, will not be considered.

Nor do we think that the question of the *absolute* liability of the company, as a common carrier and as an insurer of the property, is in the case:

1. For the reason that the complaint appears to go upon the theory, and directly charges, that " the said horses were so

greatly cut, jammed, etc., and so permanently and greatly injured, etc., by reason of the negligence and carelessness of the defendant, while it had the care and charge of the same as aforesaid, etc., and by reason of the negligent care and careless conduct and misbehavior of the defendant in its calling as a common carrier," etc. It would be a very technical and, as we think, unwarranted construction of the complaint, to hold that it contained a joinder of two causes of action, one predicated upon the absolute liability of the company, and the other upon its restricted liability, dependent upon actual carelessness and fault on the part of the company. The allegations of negligence are in the seventh subdivision of the complaint, and in the natural order and connection of the general statement of the injury and damages complained of, and are not so separate and independent as to indicate a design to state another cause of action.

2. Because the restricted liability of the company in the carrying of the property injured, dependent upon its negligence and carelessness as charged in the complaint, clearly appeared by the receipt or contract introduced in evidence by the plaintiff himself.

As we view the case, it must turn and be determined upon the question whether the defendant was careless, negligent, or in fault, in producing the injury complained of.

According to the evidence, the letters " O. R.," found in the contract, meant *Owner's Risk;* and the defendant, in carrying live stock, always shipped it at the owner's risk, and, for that reason, at reduced rates.

The plaintiff testifies that he did not *see* the words " O. R.," and never saw them until the day of trial, although the receipt had been in his possession and was produced by him on the trial; but there is no evidence, and he does not testify, that he did not *understand* the meaning of the abbreviation as used in it to be, owner's risk. The point made by the learned counsel of the respondent, that the plaintiff's testify-

ing that he did not *see* these letters in the receipt, and not testifying also that he did not *understand* them, was an admission that he did know their signification, has much force. But the authorities are clear that he was bound to know what the contract contained and meant, and the effect of all its terms and conditions. *Fuller v. The Madison Mutual Ins. Co.*, 36 Wis., 599. In the case of *Strohn v. Det. & Mil. R'y Co.*, 21 id., 554, it is held that the possession of the receipt by the plaintiff, containing special terms, is at least *prima facie* evidence of his assent to it, and in most cases it may be absolutely conclusive. This authority would throw the *onus* to prove that he did not understand the meaning of these letters, upon the plaintiff; and he offers no such evidence, not even his own testimony, and he was for a long time in the exclusive possession of the receipt.

In *Betts v. The Farmers' Loan & Trust Co.*, 21 Wis., 80, this court, in the opinion of its learned chief justice, held that it was competent for the common carrier, by express contract, to limit its liability in all respects with reference to this kind of property.

This being, then, the true attitude of the case, the only remaining question is, whether the respondent, through its agents, servants, employees in the construction of its cars or in its management of the train, or in any other way, was guilty of any negligence, carelessness or fault which caused or produced the injury to the property of the plaintiff, of which he complains.

It seems to be clear that the injury was caused by the breaking of one of the wheels under one of the freight cars of the train, which threw the car containing the horses off the track, and injured them. The wheel was new, and had been run but a short time, and was in appearance perfectly sound and of good material; and the presumption was, that it had passed the proper inspection, both at the place of construction and on the road, by competent inspectors; and, when examined after

the accident, no flaw or defect could be observed; and its breaking was unaccountable; and the track upon which the train was wrecked was in good order.

The respondent's liability depending upon the carelessness or fault of its agents, employees or managers in some way, and the appellant's right of recovery depending upon the same being clearly shown by evidence, and it being his duty to furnish such evidence, it certainly was incumbent upon him to show how and why the accident occurred.

From all that appears in the evidence, it was a mere accident, and unaccountable.

The appellant having wholly failed to prove his case, the circuit court very properly ordered a verdict to be rendered for the respondent; and the judgment must be affirmed.

*By the Court.* — The judgment of the circuit court is affirmed, with costs.