## STEFFEN VS. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

NEGLIGENCE. *(1) Burden of proof. (2) When error to submit the question of negligence to the jury.*

1. One who brings an action as for an injury caused by defendant's negligence, has the burden of proving such negligence.
2. In such an action, where, upon plaintiff's evidence, the accident appeared unaccountable, and defendant's evidence, so far as it accounted therefor, showed that it arose from *an occult risk incident to the employment,* or that, if there was negligence, it was that of the plaintiff, it was error to submit the question of defendant's negligence to the jury.

APPEAL from the Circuit Court for *Dane* County.

Action for an injury received by the plaintiff while in the defendant's employ. The complaint alleges, in substance, that, on the 20th of June, 1877, plaintiff was in defendant's service as a section hand, laboring on its track between certain stations in Dane county, under the direction of a superior officer and agent of the defendant, to wit, the overseer of said section; that while so acting he was lawfully upon the premises, engaged with others of defendant's servants in repairing said track; that while he was so engaged, the defendant, by its agents, officers and employees, so carelessly, etc., provided a locomotive engine and cars which were unsafe and insecure, and so negligently and unskilfully operated and managed said engine and cars, and so neglected to keep in order their track at said place, and to keep it free from obstructions and stones, and so neglected to keep said track safe and suitable for the use of the traveling public and of defendant's employees engaged thereon, that, while plaintiff was standing lawfully upon defendant's grounds at said time and place, and at a reasona-

ble distance from the traveled track, and while said engine and cars were passing (being a regular passenger train), a large stone was hurled from the track by said train with great force and violence against plaintiff's person, whereby his leg was broken and he was otherwise · greatly injured, to his damage $5,000. The answer was a general denial, and an averment of contributory negligence.

The evidence will not be stated, its general effect, as understood by this court, sufficiently appearing from the opinion. At the close of the plaintiff's evidence, and again after all the evidence was in, defendant asked for a judgment of nonsuit, which was denied. The cause was then submitted to the jury upon the following, among other instructions: "It is submitted to you to determine whether the overseer was guilty of negligence in omitting any precaution which ordinary care required of him at that time and place, in the line of his employment; . . . and if you find that he omitted any such precaution, and that such omission contributed to or caused the injury complained of, and that plaintiff was guilty of no negligence contributing to the injury, your verdict should be for the plaintiff."

Verdict for the plaintiff for $1,200; new trial denied; and defendant appealed from a judgment on the verdict.

For the appellant, there was a brief by *Smith & Lamb*, and oral argument by *George B. Smith*.

*Burr W. Jones*, for the respondent:

The question is, whether there was any evidence for the jury, of negligence on the overseer's part. It was plainly the duty of the overseer so to superintend the work that the laborers, in the exercise of ordinary care, would escape such injuries as plaintiff suffered. He had superior opportunities for the inspection of the track; he had no other duty than to remain upon it, and to direct the workmen. It was his right and duty to command such help as was necessary to keep the track free from obstructions endangering the common safety. He had

the watch and the time-table in his pocket. Plaintiff was down on the side of the embankment, where only a part of the track was in view; he was engaged in shoveling, and necessarily most of the time in a stooping posture; and it was no part of his duty, without orders, to keep the track for forty-five feet between himself and the overseer, level and free from obstructions. At the point where the injury happened, eight or nine men were shoveling into the center of the track gravel and large stones, some of them as large as a man's double fists. The use of such material for the purpose rendered necessary a corresponding degree of care on the part of the overseer. The testimony shows conclusively that for some minutes (from four to ten) the overseer had been standing at the northern end of the line of men, forty or forty-five feet away from the plaintiff; that in the meantime six or eight men had been busy, between him and the plaintiff, shoveling gravel and stones into the center of the track, all or nearly all the men standing below the track on the side of the embankment; that no warning whatever was given them by the overseer, of the approach of the train, and no direction given to cease their work; and that they had barely time to get out of the way before it passed. The testimony of the overseer himself shows beyond controversy, even if it were not self-evident, that it is dangerous to leave stones of the character described, along the rails and ties. It also shows that, when the injury happened, he was nearly three rods away from the place of its occurrence, and had been so for some minutes, and consequently, at the critical time, had left the track uninspected. Moreover, the very defense interposed is a confession of negligence. Its theory was, that the stone must have lain on the outside of the rail, and close to it, and that it was thrown out as the wheel passed along or over it. But it was conceded by the overseer that it was improper to leave stones of that kind near the rails, inside or outside. The overseer had the whole track under his charge, and defendant cannot escape liability

by showing that the portion between the rails was in order, and the part outside obstructed. Moreover, the testimony left the impression that in all probability the stone was lying some distance north of the plaintiff, and at a point where he could not have seen it, even if it had been his duty to clamber up to the track every time he saw a stone thrown upon it. Defendant's own proof, as it appeared to the jury, amounted to an absolute demonstration of the negligence of leaving such stones as were described and exhibited by it, around the ties and rails of the track. Negligence must often be inferred from circumstances. If the facts proved make it probable that defendant violated his duty, it is for the jury to decide whether he did so or not. Shearman & Redf. on Neg. (2d ed.), § 13; *Prideaux v. Mineral Point,* 43 id., 525–6; *Gates v. Hughes,* 44 id., 332. And unless the court can say that, upon the most favorable construction in plaintiff's favor, which can be given to the evidence, there is nothing to submit to the jury, a nonsuit is improper. *Ewen v. Railway Co.,* 38 Wis., 628; *Langhoff v. Railway Co.,* 19 id., 489; *Dorsey v. Construction Co.,* 42 id., 583; *Gower v. Railway Co.,* 45 id., 182; *Bessex v. Railway Co.,* id., 477.

RYAN, C. J. The respondent brought his action for the appellant's negligence, and it was incumbent on him to establish it. Negligence is not to be presumed in the absence of evidence tending to prove it. A plaintiff charging negligence as the ground of his action takes the *onus probandi.* The nature of an injury may indeed, in some cases, raise a presumption of negligence. But the respondent's injury is not of such a character. He established no cause of action, without evidence tending to show the appellant's negligence in causing his injury. Wharton's Neg., § 421; *Morrison v. P. & C. Construction Co.,* 44 Wis., 405; *Nitro Glycerine Case,* 15 Wall., 524.

As the respondent's evidence left the case, his injury ap-

peared the result of unaccountable accident. There was no evidence tending to show where the stone which struck him came from, or how or by what it was put in motion. The whole body of the evidence rendered it most improbable, indeed nearly or quite impossible, that it could have come from that part of the track between the rails, by force of the passing train. All the gravel on that part of the track appears to have been several inches below the cow-catcher, the lowest part of the train. And there was nothing tending to show that the stone could have come from that part of the track outside of the rails. The cause of the accident rested in pure conjecture, without evidence tending to explain it, or to connect it in any way with any negligence of the appellant. At the close of the respondent's evidence, it appeared to be a case of unaccountable misadventure, for which no one was responsible. *Harvey v. Dunlop*, Supp. to Hill & Denio, 193; *Brown v. Kendall*, 6 Cush., 292; *Nitro Glycerine Case*, *supra*. And a nonsuit ought to have been granted when the respondent rested.

The appellant, however, gave evidence of some experiments tending to account for the injury. These experiments raise some presumption, perhaps a strong one, that the stone came from the outside of the rail, next to and nearly or quite directly opposite the respondent where he was struck. It appears that such stones, placed on the head of a spike and rested against the outside of the rail, were several times driven by a passing train, at a right angle or nearly so from the rail, with force enough to cause such an injury at such a distance.

If these experiments do not account for the accident, it still remains unaccountable. And the case will be considered on the presumption which the experiments raise.

The negligence imputed to the appellant is the failure of the boss of some workmen, of whom the respondent was one, to remove the stone upon the approach of the train so that the injury could not have occurred. If the boss of a gang of

mere laborers, himself little or no more, should be held chargeable with notice of such a danger, the law would impute to him knowledge of a law of motion quite new to every member of the court upon the argument of this appeal. But the evidence *prima facie* establishes that, if leaving such a stone in such a place were negligence, it was the negligence of the respondent himself.

The learned counsel for the respondent dwelt much upon the duty of the appellant to keep its track in order. There is no necessity to insist upon the duty of a railroad company to keep its track in good order for the purposes for which it is built, the safe passage of trains. And these workmen appear to have been employed to perform this very duty for the appellant at the *locus in quo*. The track had been raised, and the men were engaged in ballasting it with gravel lying at the side of the track. It appears to have been the duty of each man so employed to shovel gravel upon the track in front of him, until there should be enough so shoveled up as to need leveling on the track, and thereupon to level it from time to time as might be necessary, each workman for himself, to the extent of his own work. This appears to have been mere labor, not skilled labor in any sense. And the office of the boss appears to have been chiefly or wholly to see that the men under him performed their duty.

Assuming the theory of the experiments, the stone which injured the respondent was, in the absence of evidence to the contrary, presumably thrown up by himself, in his own immediate front, and if it should have been removed from the tie, it was his own duty to remove it. Indeed, it seems to have been impracticable for the boss of the work to examine the work in detail, at the approach of trains, in order to guard against such possibilities as the one in question, without keeping his men idle great part of their time. His first and paramount duty of supervision was to see the track safe for passing trains. And before the happening of this accident,

Steffen vs. The Chicago & Northwestern Railway Co.

no rule of ordinary care could well have required him to inspect the track outside of the rails at the approach of every train.

The relation of master and servant does not imply the master's guaranty of the servant's safety. "A servant," says BLACKBURN, J., in *Morgan v. Railway Co.*, 5 Best & Smith, 570, "who engages in the performance of services for compensation, does, as an implied part of the contract, take upon himself, as between himself and his master, the natural risks and perils incident to the performance of such services." This rule is universal. Wharton's Neg., secs. 201, 205; *Strahlendorf v. Rosenthal*, 30 Wis., 674; *Priestley v. Fowler*, 3 Mees. & Wels., 1; *Riley v. Baxendale*, 6 Hurl. & N., 445; *Woodley v. Railway Co.*, L. R., 2 Ex. Div., 384; *Gibson v. Railway Co.*, 63 N. Y., 449; *Hayden v. Manuf'g Co.*, 29 Conn., 548; *Ladd v. Railroad Co.*, 119 Mass., 412.

There may be latent risks in an employment. Where these are known to the master, it is his duty to notify the servant. But when they arise from no negligence of the master, but are incident to the nature of the service, and unknown to the master, through no negligence of his, the risk is with the servant, not with the master. Wharton's Neg., 206–211.

Whether the injury of the respondent arose from unaccountable accident, or from an occult risk incident to his employment, the respondent is not entitled to recover. And the appellant's second motion for a nonsuit, at the close of the evidence, should have been granted.

*By the Court.* — The judgment is reversed, and the cause remanded to the court below for a new trial.