WOOD vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY
COMPANY.

*January 12 — February 8, 1881.*

NEGLIGENCE.   *(1) Presumptions: Evidence: Court and jury. (2) Opin-*
*ion of witness.*

1. A kerosene lamp was left burning after midnight and after all persons had left the building, in defendant's telegraph office, and mounted upon a bracket attached to the frame of a window in the partition between such office and defendant's warehouse; and before morning the warehouse and plaintiff's goods therein were destroyed by fire. Assuming that the fire was caused in some way by the burning lamp, the question was, whether defendant was guilty of a want of ordinary care in leaving the lamp thus burning; and there was no proper evidence upon that ques-tion, apart from the above facts. *Held*, that it must be *presumed* that defendant used due care in respect to the lamp, its material, construction and location, the oil used therein, etc.; and that there was nothing to support a verdict against defendant.
2. The statement of a witness that he would have considered it dangerous to leave the lamp burning, is not admissible as evidence in such a case.

Wood vs. The Chicago, Milwaukee & St. Paul R'y Co.

APPEAL from the Circuit Court for *Crawford* County.

Action for the value of goods destroyed by fire, alleged to have been caused by defendant's negligence, while they were in possession of defendant as warehouseman, at one of its depots. At the close of plaintiff's evidence, a motion by defendant for a nonsuit was denied; and evidence was then introduced in defendant's behalf. So much of the instructions given by the court as is important here, will be found in the opinion. The following questions were submitted to the jury for special verdict: "1. Did the fire which consumed the depot building originate from the kerosene lamp left burning therein by an employee of the defendant? 2. Was the leaving of a kerosene lamp burning in the office of the depot building such an act of carelessness, with reference to its liability to communicate fire, as would prevent a man of ordinary prudence in the care of his own property from having so left a lamp burning?" The jury answered both these questions affirmatively, and also found a general verdict for the plaintiff. Defendant's motion for a new trial was denied; and it appealed from a judgment on the verdict.

*Melbert B. Cary*, of counsel, for appellant, argued, among other things, 1. That the motion for a nonsuit should have been granted. The burden of proving negligence was upon the plaintiff, but there was no evidence offered upon that subject. See *Kronshage v. Railway Co.*, 45 Wis., 503. 2. That the court erred in permitting a witness to testify that he would have regarded it as dangerous to leave lamps burning. This error is the same as that for which a former judgment in this case was reversed. *Wood v. Railway Co.*, 40 Wis., 582. 3. The court erred in its charge to the jury. It directed them to answer a material question in the case upon which there was no evidence whatever. In such a case the question, if it is to be answered at all, is for the court, not the jury. "Judges do know as much as juries what is the usual and normal state of things." 4 L. R., Exch., 40.

For the respondent there was a brief by *Hazelton & Provis*, and oral argument by *Mr. Provis:*

There was no error in denying the nonsuit. The evidence showed that a kerosene lamp had been left burning in the dispatch office of the depot building, and that the fire originated there. This tended to show negligence. The sufficiency or conclusiveness of this evidence was for the jury, and not a matter of law for the court. *Grasse v. Railroad Co.*, 36 Wis., 582; *D. & M. Railroad Co. v. Curtis*, 23 id., 152; *Langhoff v. Railway Co.*, 19 id., 489; *Duffy v. Railway Co.*, 32 id., 269. The danger from such a lamp and its liability to explode are matters of universal notoriety, requiring no proof. *White v. R. R. Co.*, 17 Am. Law Reg., 783–790. The jury might base their finding upon this common knowledge, and the instructions were therefore not erroneous. *Craig v. Durrett*, 1 J. J. Marsh., 366; 1 Greenl. Ev., § 48.

ORTON, J. There was considerable conflict of evidence as to the origin of the fire which consumed the warehouse and the goods of the plaintiff therein. The evidence on this point was entirely circumstantial, and involved to some extent the credibility of witnesses, and at best falls short of proving with absolute certainty the origin of the fire; but we cannot say that the jury were not warranted in believing, from evidence making it strongly probable, that it originated from a kerosene lamp on a bracket attached to a window-casing in the telegraph office of the depot building, and left burning after midnight during the absence of all persons from the building. This question having been disposed of by the jury in their first finding, that the fire did originate from this kerosene lamp, there was still another question, of equal if not of much greater importance, whether the defendant company was guilty of a want of ordinary care in so placing and leaving said lamp. The form of this question, which the jury answered in the affirmative, was as follows: "Was the leaving of a kerosene

Wood vs. The Chicago, Milwaukee & St. Paul R'y Co.

lamp burning in the office of the depot building such an act of carelessness, with reference to its liability to communicate fire, as would prevent a man of ordinary prudence, in the care of his own property from having so left a lamp burning?" This question made the carelessness, or want of common care, of the defendant depend upon one act only, and that was the " *leaving* of a lamp burning in the office of the depot building;" but it was materially qualified by the words, " with reference to its liability to communicate fire."

This qualification opened to the jury a very wide field of necessary inquiry, and made their answer depend upon their finding many other facts besides the mere " *leaving* of a lamp burning in the office of the depot building;" upon which other facts depended, and from which necessarily and naturally would follow, this general conclusion, that the lamp was liable to communicate fire. Whether a burning kerosene lamp is liable to communicate fire depends altogether upon—*first*, what kind of a lamp it was in material and construction; *second*, where and in what manner it was placed with reference to its proximity to any other burning material to which it could or would be likely to communicate fire; *third*, its exposure to currents of air or otherwise; *fourth*, the quantity and quality of the kerosene oil or other burning fluid in the lamp, and its liability or probability of explosion or otherwise. There was not a particle of evidence in respect to these important particulars, upon which the jury could base even an opinion that this lamp was of such a character, as to position, construction, quantity or quality of oil it contained, or in any other respects, that it was " liable to communicate fire." It is true that the jury found that the fire originated from the lamp, and without any very certain evidence that it did, and entirely from circumstantial evidence, and that confined to mere appearances, and the observation of some of the witnesses that the fire was first seen in the room, or that part of the building, where the lamp was left burning. This, to say the least, was not very conclu-

sive evidence even of that fact; and yet the jury found from that fact alone that the defendant company was guilty of a want of ordinary care in leaving the lamp burning in that room, without a single other fact upon which such a finding could be predicated.

When the plaintiff's evidence was closed, the learned circuit judge said, in the presence of the jury and the parties: " That on a certain night, between 12 and 1 o'clock, the night operator left the office and left a lamp burning; that the witnesses who first saw the fire say that it presented itself in the southeast corner of the building, which is the quarter where the telegraph office was, and the quarter where the lamp was left burning; and the lamp was left burning by a window that is in the partition between the waiting room and the operator's room. Now, that is the whole testimony. That is all there is. There is no testimony on the subject of danger of kerosene at that time, or the quality of kerosene used at that time, or the tendency of kerosene when left burning to explode in a lamp. There is nothing of that kind."

Again, the learned judge said in his charge to the jury: " In the absence of any evidence tending to show an explosion of the lamp, or its liability to explode unless watched, or its liability to communicate fire at all, if left alone, can you say?" etc. " Was the act of leaving a kerosene lamp burning, as you find the lamp was left burning, an act of carelessness as embraced in the terms of the question? What is the evidence upon that subject? If there is none in the case, upon what are you to predicate a finding? Without any evidence, can you say from a preponderance of evidence that it was an act of carelessness? You are not to rely upon your own individual opinion. In the absence of all proof, you are not to ignore common knowledge upon a subject that enters into the everyday life of the people of the country." This last sentence was excepted to by the learned counsel of the appellant, as also the following instruction: " From that common knowledge, com-

Wood vs. The Chicago, Milwaukee & St. Paul R'y Co.

mon to you as to every other man, is the leaving of a lamp filled with kerosene burning in an office or room of a building ordinarily considered careless or dangerous by persons of ordinary prudence in protecting their own families and property?"

The parts of these instructions excepted to were unquestionably and fatally erroneous. The jury are told that there is no evidence whatever on which they could predicate a finding of carelessness against the defendant, and yet they are told that they may so find upon "common knowledge," "common to them as to every other man." So far as we know from the evidence in this case, neither the jury nor any "other man" had any knowledge, common or otherwise, of any facts and circumstances by which the carelessness of the company could be determined. So far as the jury knew, or could know, from any evidence in the case, the fire originated from the lamp in some unknown and unaccountable manner, and from some unknown cause; and this primary cause of the fire still rests in mere conjecture. For aught that appears in the case, the fire was purely accidental, unforeseen and unaccountable, as was the cause of the injury in *Smith v. C., M. & St. P. R'y Co.*, 42 Wis., 520; *Steffen v. C. & N. W. R'y Co.*, 46 Wis., 259; and *Morrison v. The Phillips & Colby Const. Co.*, 44 Wis., 405.

How can negligence be inferred from such a bare occurrence, without a knowledge of all the circumstances under which it took place? An act which is not in itself dangerous, or from which negligence cannot be necessarily and naturally inferred, or an act from which injurious consequences would not be reasonably expected or apprehended by a person of common prudence, is not an act of negligence. To determine whether an act is negligent, its character and all of its qualities, and all of the circumstances under which it was done, must be known and considered. It is incumbent in all such cases upon the plaintiff to prove the negligence of the defendant as an

independent and affirmative fact, although such fact may be inferred from such other facts in evidence as lead directly and logically to such a conclusion. *Steffen v. C. & N. W. R'y Co., supra; Smith v. C., M. & St. P. R'y Co.*, 42 Wis., 520; *Morrison v. Phillips & Colby Const. Co.*, 44 Wis., 405; *Erd v. C. & N. W. R'y Co.*, 41 Wis., 65; *Read v. Morse*, 34 Wis., 315; *Case v. Hobart*, 25 Wis., 654.

In the absence of any proof to the contrary, it must be presumed that the defendant company used due care in respect to the lamp and its use at the time of this occurrence; that the lamp was of proper construction and material; that it was in a safe and proper place; that it was not exposed to currents of air; that the oil or other burning fluid in it was of safe and proper quality, and not liable to explode; that the lamp left burning was not liable to communicate fire to other burning material in the vicinity; and that there was nothing in the character or situation of the lamp to indicate that it was dangerous, or that would cause any ordinarily prudent person to expect or apprehend any dangerous consequences from leaving it burning where it was at the time, and during the absence of all persons from the building. With these presumptions in favor of the defendant, it would most certainly not be within the "common knowledge" or experience of any one that the defendant was guilty of a want of common care and prudence in simply leaving such a lamp, and so situated, burning in a room or building during the absence of all persons. The instances of such a lamp, so situated, exploding or causing in any manner the burning of the building, have been exceedingly rare, if any ever occurred anywhere or at any time. Negligence cannot be inferred from any mere act which is the cause of an injury, unless such injury is the necessary or usual and ordinary consequence of such an act; and most certainly negligence ought not to be imputed without proof, when injurious consequences were scarcely ever known to follow such an act.

In this case there was not only no evidence whatever to sustain the finding of negligence against the defendant company, but it was clearly erroneous for the court to charge the jury that no such evidence was necessary. It is true, the learned circuit judge instructed the jury, in respect to the danger of leaving the lamp burning, as follows: "There is some evidence upon the subject of danger. Palmer says that he would have considered it dangerous to leave a lamp burning. What the danger is, to which he directs his judgment, he does not say, — whether fire, burglars or robbery." This testimony was objected to at the time by the learned counsel of the appellant, and it was clearly inadmissible, as being the mere opinion of the witness, and that based upon no facts either proved or hypothetical; and in justice to the learned judge it will be assumed that the last clause of the above instruction was intended to destroy its effect as evidence, and remove from the minds of the jury any impression it might have made. The jury were afterwards instructed, as we have seen, that there was no evidence on the question of negligence, and that it might be determined by the jury from their "common knowledge."

There was a motion for a nonsuit, and afterwards for a new trial. The first motion should have been granted; but, failing in that, the verdict ought to have been set aside and a new trial ordered.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for a new trial.