SPILLE, Administrator, Respondent, vs. WISCONSIN BRIDGE & IRON COMPANY, Appellant.

*December 22, 1899 — January 9, 1900.*

*Negligence: Master and servant: Defective appliances: Special verdict: Instructions to jury.*

1. Plaintiff's intestate was killed by the falling on him of a load in process of being raised by defendant's hoisting apparatus, the accident being occasioned by the breaking of an eyebolt that assisted in supporting the load. *Held,* that the submission as part of a special verdict of a question whether the proximate cause of the death of plaintiff's intestate was the want of ordinary care in the construction of the eyebolt, or in the selection of the material for the same, while defective in form, was not prejudicial error in view of the answers of the jury to other questions, in effect, that the want of ordinary care in the manufacture was the proximate cause.

2. In the absence of proof that a defective condition of the eyebolt arose from want of ordinary care in selection of the material from which it was constructed or in its construction, it is error to charge the jury that the mere breakage raised a presumption of negligence on the part of the defendant.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *E. P. Vilas.*

For the respondent there was a brief by *Fiebing & Killilea,* attorneys, and *C. H. Van Alstine,* of counsel, and oral argument by *Mr. Van Alstine.*

CASSODAY, C. J.   This action was commenced December 21, 1896, to recover damages sustained by the alleged negligent killing of the plaintiff's intestate, June 18, 1896, while in the employ of the defendant as a laborer unloading iron from flat cars at the defendant's works at North Milwaukee

by using and operating an air hoist which was at the time fastened to some iron bars, weighing 3,795 pounds, for the purpose of lifting such bars from off the car; and upon the bars being lifted by the air hoist, and while the force was being applied, the eyebolt which fastened the air hoist to the crane above broke, and the air hoist fell upon and instantly killed the plaintiff's intestate. Issue being joined and trial had, the jury at the close thereof returned a special verdict to the effect (1) that the plaintiff's intestate, Martin. Kuettman, was killed while in the employment of the defendant by the falling of an air hoist, so called, at the time alleged in the complaint; (2) that the plaintiff's intestate left his widow him surviving; (3) that the air hoist fell by reason of the breaking of the eyebolt by which the same was attached to or connected with the gauntree, so called; (4) that the defendant, in the selection of the material for the eyebolt, did not use ordinary care and prudence; (5) that the employees of the defendant who made the eyebolt did not use ordinary care and prudence in the manufacture of the same; (6) that a person of ordinary intelligence, in the light of attending circumstances, ought to have known or apprehended that the eyebolt was liable to break and let the air hoist fall and injure one or more of the employees at work therewith; (7) that the defendant was guilty of a want of ordinary care in the selection of the material or in the construction of the eyebolt, or either or both, which was the proximate cause of the death of the plaintiff's intestate; (8) that such want of ordinary care was such that a man of ordinary intelligence would have anticipated or apprehended consequent injury to the employees working about the air hoist; (9) that such want of safety in the material from which the eyebolt was constructed was the cause of the breaking of the eyebolt; (10) that such failure of the employees of the defendant who constructed the eyebolt to use ordinary care in the construction thereof was the cause of

the breaking of the eyebolt; (11) that the plaintiff's intes-
tate was not guilty of any want of ordinary care which was
the proximate cause of his death, or which proximately con-
tributed thereto; (11½) that a man of ordinary intelligence
and prudence ought not to have discovered the danger to
be apprehended from the appliance not being reasonably
safe; (12) that they assess the plaintiff's damages by reason
of the pecuniary loss of the intestate's widow at $2,900.
From the judgment entered upon such verdict in favor of
the plaintiff for the amount stated, with costs, the·defend-
ant brings this appeal.

It appears from the description of the gauntree in evi-
dence, in effect, that there was a heavy frame structure,
about eighty feet in width from track to track, on which it
traveled; that the top frame extended east and west about
eighty feet; that the extreme height of the top column was
about twenty-eight feet from the ground; that the upper
frame was about four and one half feet wide and five or five
and one half feet deep, leaving the distance from the bottom
of the frame to the ground about twenty-two feet; that the
top frame was supported by two legs on each end — the two
bars or legs being, as stated, about eighty feet apart; that
such pairs of legs were braced together and run on wheels,
which in turn rested on a "T" rail, and the gauntree was
moved along the track by means of pinch bars; that the track
was about 160 feet long, and between the rails and about
ten feet from the west end was a railway track on which
cars were placed in loading and unloading structural iron
and steel by means of the gauntree and the hoist attached
to it; that upon the top of the frame structure was a track
extending from east to west, as stated, on which the carriage
which supported the hoist was run; that when the load was
lifted by the hoist it could be moved from east to west and
west to east by moving the carriage which supported the
hoist along the top frame of the gauntree, or it could be

moved from north to south and in the contrary direction
by moving the entire gauntree along·the track by means of
pinch bars inserted between the wheels and the track.

The air hoist consisted of a cylinder with piston head, the
cylinder being hung in a perpendicular position. From the
piston head was suspended a long and heavy hook, to which
the load would be attached by chains. The piston head
was operated by means of compressed air. The air, being
admitted beneath the piston head, would force the latter
up and lift the load. It was lowered by letting out the
air. The hoist was suspended from the center of a carriage
which traveled from east to west, as stated. The carriage
had a gear of about twenty inches. It was about twenty
inches long, and the wheels about sixteen inches in diameter.
The hoist was suspended from such carriage by means of an
eyebolt. The eyebolt was about ten inches long. In the
upper end was a hole through which was passed an iron
" bent," or round bar, securely fastened to the carriage, thus
allowing the eyebolt to hang from the carriage. The lower
end of the eyebolt was threaded, and was screwed into the
top and center of the air hoist. It was possible to oscillate
that eyebolt north and south to some extent — say, on the
beam of the hoist, when the piston was hanging down, a
distance of two feet either way from the center — four feet
total—there would be an oscillation of two feet either way
from the center at the bottom of the air-hoist sixteen to
eighteen feet. The bolt had an oscillation from east to
west practically unlimited — it could not swing to an angle
of 45°, but could swing four feet either side of the center
of the beam end — not more than four feet, because there
was a hole or slot in the carriage, up through which the eye-
bolt ran, that would not permit it to swing further.

The cause of the accident was the breaking of such eye-
bolt while a load was being lifted, which caused the hoist
to fall upon the deceased, who was under it at the time, and

was instantly killed.  At the time of the accident the deceased and two other employees of the defendant were engaged in unloading iron from a flat car by the use of the gauntree, just after dinner of the day mentioned.  The iron on the flat car being placed under the air hoist and the chain placed around it at or near the center of the load and then fastened to the hook at the lower end on the cylinder of the air hoist, thereupon the deceased, whose business it was to operate the air hoist, let the air on, and so caused the iron to be lifted up some distance, while the other two would hold the load steady or balanced.  Upon its being discovered that the chain was not in the middle of the load (that is to say, that the load was not balanced) the load was let down upon the car again, and the chain readjusted, and thereupon the deceased again let on the air, and as it started to raise the load the eyebolt broke, and the hoist fell upon the deceased and killed him.

Error is assigned because the court refused to direct a verdict in favor of the defendant.  This is based upon the ground that the evidence is insufficient to sustain the fourth finding of the jury, to the effect that the defendant did not use ordinary care and prudence in the selection of the material out of which the eyebolt was constructed, and also upon the ground that the evidence is insufficient to sustain the fifth finding of the jury, to the effect that the defendant did not use ordinary care and prudence in the manufacture of the eyebolt.  We find no evidence in the record of any want of ordinary care and prudence in the selection of the material.  There is evidence tending to prove that after the eyebolt was broken a small dark spot was discovered in the center (a little space in the center which had round edges instead of sharp edges), and that that indicated that it had been spoiled or burnt or overheated in the center, and that such defect was the result either of overheating when manufactured, or that it was made of a poor piece of iron, and

that the iron in the eyebolt was poorer than some of the plaintiff's experts had been in the habit of working upon; that the defect in question could have been the result of being manufactured from a poor piece of iron in the start, or it could have been burnt in the welding or the manufacture of it; that, if it was burnt in the manufacture, then it must have been discovered by a skilful person present at the time of the manufacture, but not subsequently; that there was nothing in its appearance after it was manufactured to indicate a defect. On the other hand, the defendant's expert, who manufactured the eyebolt, and who had had twenty years' experience, after explaining the difference in welding of " common wrought iron " and " Swede iron," testified that he welded this eyebolt, and that it was not overheated to the injury of its structural strength; that, in the welding of a piece of iron like that, it was impossible to overheat the center without overheating the outside; that, if it had been burnt, it would have shriveled out, slivered, and made a rough, ragged thread when cut; and that when it was broken it would have shown a hard, crystallized surface inside. We cannot hold that it appears from the undisputed evidence that there was no want of ordinary care and prudence in the manufacture of the eyebolt. The refusal to take that question from the jury therefore was not error. In answering the tenth question the jury found that the want of ordinary care in the construction caused the breakage of the eyebolt. But in answering the ninth question the jury found that the want of safety in the material from which the eyebolt was constructed was the cause of the breakage of the eyebolt. Possibly that might have been so without the defendant being negligent in the selection of the material, as found in answering the fourth question.

Error is assigned in the submission of the seventh question; that is to say, whether the proximate cause of the death of the plaintiff's intestate was the want of ordinary

Spille vs. Wisconsin Bridge & Iron Co.

care in the construction of the eyebolt, or in the selection of the material for the same. Part of the jury might have based their finding upon one part of the question, and the other part of the jury upon the other part of the question, and hence there is no certainty of a finding by the whole jury upon either part of the question. *Klochinski v. Shores L. Co.* 93 Wis. 417. We must hold that that question was defective in form. It follows that the eighth question submitted, which was based upon the seventh, was also defective. But we are not prepared to say that, in answering the fifth, sixth, and tenth questions, the jury did not find, in effect, that the want of ordinary care and prudence in the manufacture of the eyebolt was the proximate cause of the death of the plaintiff's intestate.

But the judgment must be reversed for errors in the charge of the court to the jury. The charge seems to be upon the theory that the mere breakage of the eyebolt raised a presumption of negligence on the part of the defendant. This was stated in various forms, to the effect that the burden of proof was on the defendant not only to prove that there was no negligence in the manufacture of the eyebolt, but also that it was made of good and safe material; and finally, after defining the burden of proof, the court charged the jury that: "It sometimes happens that you are called upon to decide against the party upon whom the burden of proof lies, without any evidence on the other side. If the party upon whom the burden of proof lies fails to make out his contention, the jury have to find to the contrary, although there is no proof to the contrary." As to the alleged negligence of the defendant in the selection of the material from which the eyebolt was constructed, as found by the jury in answering the fourth and ninth questions submitted, the portions of the charge referred to were clearly erroneous.

Thus, in *Smith v. C., M. & St. P. R. Co.* 42 Wis. 520, the plaintiff obtained a special verdict and judgment in his favor,

but the same was reversed " for the reason that there was no evidence which warranted the jury in finding that the defendant was guilty of negligence in not applying a proper and sufficient test to the brake rod," notwithstanding the jury did find " that the defendant, by the exercise of ordinary care, skill, and diligence, might have known of the defect," though it did not. It did not appear whether the car with the defective rod had been purchased by the company, or manufactured in its shops. " It was a new flat car, which had been taken into the train but two or three days prior to the accident, and appeared to be a good car." It appeared that the company applied the ordinary tests in manufacturing cars, and the ordinary inspection on the purchase of cars. But the opinion states that apparently " the defect in the brake rod was a latent one, which would not likely be detected or discovered by the usual examination or inspection of the car," and that " it would undoubtedly be impracticable to apply tests to every brake rod which is used upon defendant's cars, and, if compatible with the nature of the business, would be of doubtful utility. There should be at least some testimony tending to show that the tests applied to determine the sufficiency of the brake rod were inadequate, and not in accordance with the most approved methods, to justify the finding of the jury.' . . . The servant, then, takes the risks of the employment, and of a failure of the machinery from any latent defect not discovered by practical tests." In *Morrison v. Phillips & C. Const. Co.* 44 Wis. 405, the injury was caused by the breaking of a wheel under a freight car in the train, which threw the car containing the plaintiff's horses from the track. The track was in good order; the wheel had been used only a short time, and, upon inspection after the accident, showed no flaw or defect; and there was no evidence, except the mere fact of its breaking, which tended to show negligence of the company; and it was " held that there was no error

Spille vs. Wisconsin Bridge & Iron Co.

in directing a verdict for the defendant." In *Steffen v. C. & N. W. R. Co.* 46 Wis. 265, Chief Justice RYAN said: "There may be latent risks in an employment. Where these are known to the master, it is his duty to notify the servant; but when they arise from no negligence of the master, but are incident to the nature of the service, and unknown to the master through no negligence of his, the risk is with the servant, and not with the master." In *Ballou v. C. & N. W. R. Co.* 54 Wis. 257, the death of the plaintiff's intestate was caused by the slat or rung of the ladder at the end of a freight car giving away, by reason of the insufficient length of one of the bolts which held the same in place; and the judgment of nonsuit was sustained on the ground that the ladder was apparently in good condition, and that the defect was latent. In that case the adjudications bearing upon the subject are reviewed.

The evidence in this case left no ground for presuming negligence on the part of the defendant in the selection of the material from which the eyebolt was constructed. If such material was defective, it would seem that it must have been a latent defect, as there is no evidence that it was obvious upon inspection. The material was selected from the stock on hand, which had been purchased by the defendant's superintendent from well-known and reputable firms,— from manufacturers of special forging,— and upon the theory that human life was dependent upon it. True, the defendant constructed the eyebolt, and is responsible for any defect disclosed in the process of construction. As indicated, the man who constructed the same was skilled in the business, and had had many years' experience. He testified that there was no discoverable defect during such construction. All agree that after it was constructed the alleged defect could not have been discovered except by breaking the eyebolt. The eyebolt had been used for some weeks prior to the accident, and during that time had lifted much heavier loads

than the one it was in the act of lifting when it broke. While the air hoist, supported by the eyebolt, could be oscillated from east to west and back for a considerable distance,— practically unlimited,— yet the oscillation from north to south and the reverse was quite limited. There is no evidence as to whether the eyebolt had during such use been subjected to unusual strain or not, or whether during that time it had been partially broken or injured. One thing is very singular, and that is that the eyebolt had sufficient strength to raise the load in question several feet and let it down again just before the injury, but when it started to raise it the second time it broke. Had this been the first time of subjecting the eyebolt to such severe strain, a different question might have been presented. There is no direct evidence that the eyebolt was in apparently good condition just prior to the accident, nor, if then in apparently bad condition or partly broken, whether it was caused by the manner in which it had been used, or from the alleged negligence in the construction, or by reason of defective material from which it was constructed. True, this court has repeatedly held that "when the thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." *Cummings v. Nat. F. Co.* 60 Wis. 612; *Carroll v. C., B. & N. R. Co.* 99 Wis. 399, 403. The want of care thus to be inferred certainly applied to the management of the machine, as well as to the condition of the machine at the time. Thus, in the first of these cases it was expressly held that "an accident may be of such a character as to show, in a case where the machinery is found perfect, that there was negligence on the part of those handling it;" and the last case cited holds substantially the same. True, there is evidence in the case

at bar tending to prove that the eyebolt, when broken, was found to be defective, but there is also evidence the other way; and since at the time of the accident, and for some weeks previously, it was the business of the plaintiff's intestate to operate and manage the air hoist, and since the eyebolt had prior to the accident lifted much heavier loads, it is obvious that the presumption of want of care in the operation and management was at least as strong as the want of care in the construction. *Peschel v. C., M. & St. P. R. Co.* 62 Wis. 338.

The charge of the court to the jury as to the presumption of negligence in the construction of the eyebolt from the mere fact of breakage was erroneous.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.