SMITH VS. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

NEGLIGENCE: *Special verdict held to be unsupported by evidence.*

In an action against a railroad company, by one of its brakemen, who had been injured by the breaking of a brake-shaft or rod, the jury found specially that the defendant was negligent in not having applied a

proper and sufficient *test* to the rod. It appears that the rod broke near the platform, under the cogwheel, from an old crack or flaw constituting a latent defect; defendant's evidence tended strongly to show the exercise of great care on its part in the inspection of its cars, and the selection and testing of the materials used therein; and there was no contrary testimony. *Held,* that there was no evidence to support the finding; and a judgment based thereon is reversed.

APPEAL from the Circuit Court for *Monroe* County.

While plaintiff, who was a brakeman on one of defendant's trains, was engaged in the performance of his duty as such by putting on the brake upon one of the cars of a "wood train," the brake-staff, as he alleges, "broke in twain just below the wheel, near the top of the car, commonly called a cogwheel, on account of an old crack or seam in the same, unknown to the plaintiff and which he had no opportunity of knowing." In consequence of the breaking of this staff or rod, the plaintiff was thrown upon the track, and suffered severe injuries. This action was brought to recover for these injuries; the complaint alleging that defendant was guilty of negligence in permitting said staff or rod to be affixed to the car and to remain thereon.

There was a special verdict, the essential portions of which are sufficiently stated in the opinion. There was also a general verdict in plaintiff's favor. A new trial was denied; and, from a judgment pursuant to the verdict, defendant appealed.

Briefs were filed, by *Melbert B. Cary* for appellant, and *A. E. Bleekman* and *J. M. Morrow* for respondent; and the cause was argued orally by *John W. Cary* for appellant, and *A. E. Bleekman* for respondent.

For the appellant it was argued, 1. That a railroad company is bound only to reasonable care and diligence in providing safe materials and machinery. Wharton on Neg., § 213; *C., B. & Q. R. R. Co. v. Stumps,* 55 Ill., 367; *Wedgewood v. C. & N. W. Railway Co.,* 41 Wis., 478. 2. That mere proof that the rod broke from a latent defect was not sufficient, and,

as the only evidence in this case as to the method pursued by the company in *testing* its materials and machinery was to the effect that such method was the best known to science, and the one universally accepted, the jury could not find the defendant negligent in that respect, without going outside of its province and determining facts otherwise than upon the evidence before it. *B. & O. R. R. v. The State*, in Maryland Court of Appeals, October term, 1874, reported in 6 Am. Railway R., 276; *Wright v. N. Y. C. R. R. Co.*, 25 N. Y., 562; *Warner v. Erie Railway Co.*, 39 id., 468; *Meier v. Pa. R. R. Co.*, 64 Pa. St., 225; *Ladd v. R. R. Co.*, 119 Mass., 412; *Brown v. Railway Co.*, 58 Me., 384; and *T. W. & W. R. R. Co. v. Beggs*, in supreme court of Illinois, reported in Cent. L. J., Aug. 24, 1877, p. 193; *McPadden v. N. Y. Cent. R. R. Co.*, 44 N. Y., 478; *Carroll v. R. R. Co.*, 58 id., 126; *I. & C. R. R. Co. v. Love*, 10 Ind., 554; 29 Conn., 548; *Redhead v. Mid. Railway Co.*, L. R., 2 Q. B., 412; L. R., 4 Q. B., 379; Wharton on Neg., § 209; *Cooper v. Railway Co.*, 23 Wis., 668; *Pike v. Railway Co.*, 40 id., 586. The jury must have assumed that it was the duty of the company to test *every* brake rod by bending it hot and cold; but this is unsafe, because the strength of the rod would be greatly diminished after undergoing such a test. And, even if safe, it would be impracticable. To test a bar of iron scientifically and accurately takes considerable time; and it would be a physical impossibility to thus test every one of the million or more rods, pins, rings, wheels and rails, annually purchased by it. The universally accepted method, the world over, of testing merchandise in large quantities, is by testing samples of each lot.

For the respondent it was argued, that, as plaintiff's evidence tended to show that the flaw in the brake-staff was on the outside of the rod, and might have been seen by careful inspection of the rod, and as defendant's master car-builder, who had had charge of the building and purchase of all de-

fendant's cars, testified that such a flaw could be discovered if he were to apply a test to the rod and bend it, the jury were justified in finding the defendant guilty of negligence in not knowing the defect. *Coombs v. N. B. Cordage Co.*, 102 Mass., 572; *Ford v. F. R. R. Co.*, 110 id., 240; *Ladd v. N. B. R. R. Co.*, 119 id., 412, and cases cited; *Laning v. R. R. Co.*, 49 N. Y., 521; *Plank v. R. R. Co.*, 60 id., 607.

COLE, J. Passing by the other exceptions taken on the trial, we think the circuit court erred in denying the motion for a new trial, for the reason that there was no evidence which warranted the jury in finding that the defendant was guilty of negligence in not applying a proper and sufficient test to the brake-rod. As we understand the special verdict, the company was not found guilty of any other act of negligence or misconduct, than in that particular. For, in answer to the third question submitted, whether the defendant was guilty of negligence in not knowing of the defect in the brake-staff, or in not providing a safe and sufficient one, and, if so, in what the negligence consisted, the jury answered that they found the defendant guilty in not applying a proper and sufficient test to the brake-rod. It is true, the jury further found that the defendant, by the exercise of ordinary care, skill and diligence, might have known of the defect in the brake-rod, though it did not know of such defect; but this evidently refers to the failure to apply the proper test to discover it. In that matter alone, then, the company failed to perform its duty, and on that ground the plaintiff's right to compensation for the injury received is made to rest. It is very obvious that the verdict must be founded upon evidence, and the jury could find no fact not established by or fairly inferable from the testimony given.

On the part of the plaintiff no evidence was offered which tended in any way to prove that the company failed to exercise due and proper care and diligence in inspecting all cars

which it purchased of other parties, or in testing the iron and materials from which the cars manufactured by itself were made. It does not appear whether the car in question had been purchased by the company, or manufactured in its shops. It was a new flat car, which had been taken into the train but two or three days prior to the accident, and appeared to be a good car. When near Sparta, on returning from La Crosse, where the train had been on the morning of the fifth of May, 1873, to deliver a load of wood, the usual signal to put on brakes was given by the proper officer of the train; and the plaintiff, in the discharge of his duty as brakeman, set a brake on the car ahead, and then went to this car, which was the fourteenth from the engine; and, while he was engaged in setting the brake, the brake-shaft or rod broke just below the cog-wheel near the platform, and he was thrown under the cars onto the track, and sustained the serious injuries of which he complains. It appeared that there was an old crack or flaw in the brake-rod, which was unknown to the plaintiff and the other employees of the company, and which doubtless rendered the rod defective and unsafe. The plaintiff testified, in substance, that he had been in the employ of the company about four years; that he was a regular brakeman; but that it was also his business to look over and inspect the cars of his train every day, and see if everything was in order, and to report and repair defects if he found any. He had not been working for a week before the 5th, but on that morning returned to his work, and looked over the first eight cars from the engine, when the train started from Tomah for La Crosse. The train started right back from La Crosse after the wood was unloaded; but whether the plaintiff had time and opportunity to continue the inspection of the cars while at La Crosse, is a point left in doubt upon the evidence. But in regard to the tests applied to the brake-rods, the defendant proved by John Baillie, its master car-builder, that the iron was purchased of the best makers, and was of the best quality;

that samples of each lot were tested in the defendant's shops in the usual and most approved manner; that all materials were inspected, as well as the work done, by first-class inspectors; that he himself examined thoroughly all cars purchased by the company, as to the character of the cars, the material used, and their manufacture; and that no car was allowed to go on the road in which he could discover any defect which would make it unsafe. It appeared that the system of inspection of cars which were purchased, and the tests applied to the materials of which its cars were manufactured, were the same as those adopted or applied by railroad corporations generally. Certainly there is not a particle of testimony which tends to show that the employees of the company whose duty it was to make tests as to the sufficiency of materials used for cars, or to inspect and examine those purchased, were not skillful and competent to properly perform their duty; or that they had failed to perform it in respect to the car in question; or that they had neglected to apply the usual, well known and approved tests to the iron, or had inspected the car in a careless manner. So far as we are able to judge from the testimony, the defect in the brake-rod was a latent one, which would not likely be detected or discovered by the usual examination or inspection of the car. And, as was argued by the counsel for the company, it would undoubtedly be impracticable to apply tests to every brake-rod which is used upon defendant's cars, and, if compatible with the nature of the business, would be of doubtful utility. There should be at least some testimony tending to show that the tests applied to determine the sufficiency of the brake-rod were inadequate and not in accordance with the most approved methods, to justify the finding of the jury.

In order to prevent all misapprehension on this point, we add that it was the plain duty of the company to use due care and skill in providing suitable and safe machinery for the plaintiff to operate, and to adopt or apply all reasonable and

usual tests to discover any defect in the brake-rod. This is the degree of diligence which this court has decided the law imposes on such corporations (*Brabbits v. The C. & N. W. R'y Co.*, 38 Wis., 289; *Wedgwood v. The C. & N. W. R'y Co.*, 41 id., 478); and we have no intention of relaxing that rule. We adopt, as substantially correct, the language of the court of appeals in *Laning v. N. Y. C. R. R. Co.*, 49 N. Y., 521, that the duty of the master to the servant, or his implied contract with the servant, requires "that the servant shall be under no risks from imperfect or inadequate machinery, or other material means and appliances, or from unskillful or incompetent fellow-servants of any grade. It is a duty or contract to be affirmatively and positively fulfilled and performed. And there is not a performance of it until there has been placed for the servant's use perfect and adequate physical means, and for his help-meets fit and competent fellow-servants; or due care used to that end. That some general agent, clothed with the power and charged with the duty to make performance for the master, has not done his duty at all, or has not done it well, neither shows a performance by the master, nor excuses the master's nonperformance. It is for the master to do, by himself or by some other. When it is done, then, and not until then, his duty is met, or his contract kept." pp. 532–3. The servant then takes the risks of the employment, and of a failure of the machinery from any latent defect not discovered by practical tests. And this court, moreover, has held expressly that the negligence or misconduct of the officer or employee whose duty it is to attend to these things, and who, *pro hac vice*, represents the company in the matter, is the negligence or misconduct of the company itself. *Craker v. The C. & N. W. R'y Co.*, 36 Wis., 657. See also *Flike v. Boston & Albany R. R. Co.*, 53 N. Y., 549; *Corcoran v. Holbrook et al.*, 59 id., 517; *Ford v. Fitchburg Railroad Co.*, 110 Mass., 240.

The question before us is not one relating to the weight of

evidence or degree of proof, but it is where there is an entire absence of testimony to sustain the verdict. For there is absolutely no evidence which tends to show that the company was guilty of negligence in not applying a proper and sufficient test to the brake-rod. For this reason, we think the motion for a new trial should have been granted.

*By the Court.* — The judgment of the circuit court is reversed, and a new trial ordered.