# SUPREME COURT.

CATHERINE C. MURPHY, administratrix, &c., agt. THE BOSTON
AND ALBANY RAILROAD COMPANY.

*Negligence — Master and servant — Extending the application of the rule in
relation to co-servants.*

Employers who construct or repair machines are not liable to their
employes who are engaged in the construction or repair of a machine
upon which they are ordered to make certain repairs, provided some
other workman in the same shop has so carelessly done his prior part
of the work of repair as to leave the machine unfit to have any addi
tional work done upon it, and in consequence thereof the employe who
undertakes to do the last work is injured.

The general rule undoubtedly is that an employer who furnishes the
machine for his servant to work with is bound to provide one safe for
that purpose, but when a machine which is safe has been furnished
the men who operate ordinarily take upon themselves the risk of their
fellow-workman's carelessness.

When an accident occurs, not in the operation but in the construction or
repair of a machine for operation, in the doing of which the party, a
servant, is injured, such accident being caused by the negligence of
another servant who had done a previous and different part of such
work of construction or repair, the master is not then liable in damages
for the injury.

*Albany Circuit, May,* 1880.

AT the close of plaintiff's case a motion was made on the
part of defendants for a nonsuit substantially as follows:

The plaintiff's intestate, a machinist employed in the
machine shop of the defendant at East Albany, was killed by
the explosion of a boiler of a locomotive engine belonging
to the defendant while engaged in assisting to set the "pop-
valve" of the same in the said shop on the 6th day of
August, 1879.

Seventeen months, and again in December and January,
before the accident the engine had been overhauled and
repaired in the defendant's shop and reported finished. The

tests applied in overhauling her were personal inspection and the hammer tests.

About two weeks before the explosion the engine was again taken to the said shop for repairs of defects which had been reported by the engineer who had been running it on the road. The rules and regulations of the company required all its workmen to be constantly on the watch to ascertain the need of repairs; and those of the shop commanded that the mechanics in the shop, to whom the master mechanic thereof or the foreman committed the duty of making the necessary repairs of an engine, should repair the defects reported by the engineer and carefully examine the engine to discover if any other defects existed in the same, and if there were any of an ordinary character to repair them at once, but if the same required any of considerable magnitude to report the same to the master mechanic or foreman for further instructions; that it was impracticable for the master mechanic or foreman to make personal examination of all the engines which came into the shop for repairs, and that duty was committed to the subordinates who were competent and experienced.

The evidence showed that the mechanics who had charge of the repairs to the boiler of said engine reported to the said foreman that the necessary repairs to it had been made and that the boiler was all right, and the mechanics who had charge of the repairs to the machinery of said engine reported to said foreman that the necessary repairs to it had been made and it was all right, and that the said boilermakers and machinists worked upon the engine at the same time and in the same place in said shop; that after said reports had been made under directions of the said foreman the engine was fired and steam was made in the boiler by two workmen in said shop for the purpose of making the same ready to set the "pop-valve," which was necessary in order to complete the repairs to the said engine before it was turned out of the shop for service; that after said workmen had reported the said engine ready with steam the said foreman directed Smith, one

of the machinists who had been at work repairing said engine, to set the "pop-valve," and Murphy, the plaintiff's intestate, another machinist in said shop, to assist him in watching the fire and reporting to the said Smith the pressure of steam in the boiler as indicated by the gauge; that the "pop-valve" was to be set at a pressure of steam of 133 pounds to the square inch, which was the same pressure which the engine was carrying when it came into the shop; that the only way to set the "pop-valve" was by following the index of steam as noted by the gauge, and that the first and necessary duty in setting the same was to test the gauge by a test provided for that purpose so as to ascertain if it was right, and examine the pipe which communicated steam to it from the boiler to ascertain if it was unobstructed.

The neglect, if any, in the case as shown by the plaintiff's testimony was that of the mechanics (of whom plaintiff's intestate was one) to whom the doing of the repairs and testing the gauge, and cleaning the pipe leading from the boiler to it, was committed, in omitting the duty of thorough inspection and examination; that said mechanics worked together in the same shop, in the same circle of employment and for the same and a common purpose, which was to put the engine, which had come into the shop reported defective, in perfect repair.

The engine was examined after the explosion, and it was found that a number of stay-bolts in the right leg of the boiler were broken by rust, and the outer sheet of the boiler, through which the stay-bolts passed, was eaten away about eighteen inches in length by rust to the extent of about one-half of its original thickness at the mud ring of said boiler. It was also found that the pipe, communicating steam to the gauge, which should show the amount of steam in the boiler, by means of which the "pop-valve" could only be set, was nearly stopped by incrustated matter so that it could not indicate the true state of the pressure of steam in the boiler at any given moment.

*A. J. Parker, A. J. Parker, Jr.,* and *E. Countryman,* for plaintiff.

*Hamilton* and *Frederick Harris,* for defendant.

MOTION by defendant for a nonsuit.

WESTBROOK, *J.* — I have, during the interval which the adjournment of the court last evening has given me, considered the points which this motion for a nonsuit presents, and having reached a conclusion, I will state it and very briefly give the reasons which lead me to it. One, and I think the main, question which the motion involves is : Are employers who construct or repair machines liable to their employes who are engaged in the construction or repair of a machine upon which they are ordered to make certain repairs, provided some other workman in the same shop has so carelessly done his prior part of the work of repair as to leave the machine unfit to have any additional work done upon it, and in consequence thereof the employe who undertakes to do the last work is injured ? The general rule undoubtedly is that an employer who furnishes the machine for his servant to work with is bound to provide one safe for that purpose, but when a machine which is safe has been furnished the men who operate it ordinarily take upon themselves the risk of their fellow-workman's carelessness. When, however, an accident occurs, not in the operation but in the construction or repair of a machine for operation, in the doing of which the party, a servant, is injured, such accident being caused by the negligence of another servant who had done a previous and different part of such work of construction or repair, is the master then liable in damages for the injury ?

If it be admitted that men who work for a common object and a common employer take upon themselves the risk of the carelessness of their fellows, as illustrated by the case of the engineer and fireman of a locomotive, in running which

each performs a different duty, then why is not the same rule applicable to men who work for one object for a common employer, the employment being the repair or construction of a locomotive, in doing which different men must perform distinct and separate work ?

None of the cases cited touch this exact question, and that must, therefore, be solved amid the hurry of the circuit (which allows no time to search for precedents) by the application of general rules.

In *Wood on the Law of Master and Servant* (*sec.* 435) it is said : " It is subjection to the same general control, coupled with an engagement in the same common pursuit, that affords the test." In the construction or repair of a locomotive all workmen engaged for that purpose are, as it seems to me, within this rule though the labor of each may be different. In the progress of construction or repair different workmen have different work to do upon the same machine, but as they are all thus occupied for one object and for a common employer each engaged thereupon must, therefore, assume the risk of the carelessness of the other. In the case before us the locomotive Sacramento was sent to the repair shop of the defendant to be put in order. No one man was to do the whole work, nor did anyone employed upon it suppose it to be in a safe condition, for if it had been all knew it would not be in the shop for repair. The boilermaker was to repair and examine the boiler, machinists were to make good and adjust the machinery, and the work of setting the safety-valve at a point where it would hold 133 pounds of steam to the square inch, and no more, was a part of the necessary work of repair. All the men thus employed were workmen in the same shop, and their business was to fit locomotives for use. The deceased, a skilled machinist, by the order of the superintendent or foreman of the repair shop, was assisting one Smith, also a machinist, to set the safety-valve when the explosion took place.

Construing the evidence most favorably for the plaintiff

(it must be so construed for the purposes of this motion) it will be assumed that the boilermaker had not thoroughly done his work, that the boiler was insecure by reason of broken stay-bolts and the channeling of the plates of the boiler near the mud-ring. Assuming all this to be true, whose negligence was it?

It was the duty of the boilermaker, and that duty is proven by the foreman of the shop, to put the boiler in repair, and he had pronounced it, when it left his hands, safe for use. He had not, however, performed his duty, as must be assumed for the purposes of this motion, and for his negligence the defendant, in my judgment, is not responsible. There is no pretense that he was an incompetent man, and his orders were to repair the boiler and make it safe. He was a workman in the same shop with the deceased, employed with him for the same general purpose, to wit, the placing in order of a locomotive for use. The different kinds of labor done to produce the result did not make them workmen for a different department of service any more than the different occupation of engineer and fireman upon a locomotive to run her make them servants in different departments and the company liable for the negligent act of either which occasions injury to the other.

It was argued by the learned counsel for the plaintiff that when a workman receives orders from his superior to do work *with* a machine, that the employer guarantees the fitness of the machine to do the work ordered, and that there is no good reason why the same rule should not apply to the case of a workman ordered to make repairs *upon* it. The argument is fallacious, for in its premise it overstates the rule as to the liability of the master. It is true that the master is bound to furnish a machine fit to do work with, but it is not true that when an order is given to operate the machine that he is responsible for an act of carelessness of a co-servant, which has rendered the machine unfit for the service intended. Take the case, for instance, of a locomotive which a fireman and engineer are given to oper-

ate.   The conductor of a train, which is to be hauled by the engine, gives orders for the start.   When, however, such order is given, through some act of carelessness of one of the persons (the engineer or fireman) in charge of the locomotive, it has been either rendered or left in a condition unsafe to do the work ordered, and the other not in fault in obeying the order to start is injured, is the master whose servants they all were, to respond in damages for such injury?   Manifestly not, for the employe who gave the order had no right to assume that either the engineer or fireman had been negligent, and if he had been, it was the precise risk that the party injured assumed, for all were within the same circle or sphere, of employment.   What is true in the supposed case is equally true in the one on trial.   The boilermaker, the foreman of the shop, the deceased and Smith, who together were adjusting and setting the safety-valve, were all engaged in the same character of work, to wit: preparing the engine for service. The foreman of the shop when he directed the setting of the valve, had a right to assume the fidelity and thoroughness of the boilermaker's work, just as much right so to assume as the conductor in starting the train had a right to suppose that neither fireman or engineer had made or left the engine unsafe to obey his order.   And in neither is the master at fault, for it is simply impossible for him to test every man's work, and to know that every servant has done his duty.   The law goes far enough, when it holds the master responsible for negligence committed in a department of service different or separate from that in which the injury occurs, and the servant must himself assume the risk of the negligence of his fellows in the same department.   To hold otherwise would be the obliteration of all risk by the servant for the carelessness of his fellows, and the assumption by the master of liabilities hitherto, at least, unknown to the law, and which would impose upon him duties impossible to perform.

The case of *Besel* agt. *The New York Central and Hudson River Railroad Company* (70 *N. Y.*, 171) is nearly, though

not precisely, analogous. The plaintiff's intestate was at work in the yard of the defendant under a car standing upon the repair track repairing it. While thus engaged other cars were being drawn away by the engine when a coupling-pin broke and the disconnected cars ran back upon the down grade, striking the car upon which the party was at work and killing him. It was held the yard-master and head- brakeman were, with the deceased, co-employes of the defendant, and for their negligence the defendant was not responsible.

This decision was placed upon the ground, and I quote from the opinion of judge MILLER : " that the men were engaged in the same common work for the same common purpose, and the acts of no one of them could render the defendant liable for the injury to another." If the principle just enunciated was applicable to that cause, it must be to the one on trial. The man killed in the case referred to was a mechanic ; the men who were careless were those who moved the cars to be repaired. Their work was different, but it was all aimed at one result — the repair of machinery. In the present case the work of the boilermaker and machinist was different, but ·they also worked for one object, the repair of a locomotive, and being thus engaged, the rule of liability of the employers must be the same.

I have not overlooked the point that Smith, who was engaged with the deceased in setting the safety-valve, may also have been careless in not seeing that the pipe leading to the steam indicator was unobstructed, and that Smith's carelessness, if he was careless, was that of a co-employe. This view, however, involves a question of fact — whether the steam was put up higher than 133 pounds to the square inch ? and, therefore, the decision nonsuiting the plaintiff is not placed upon that ground, but upon that which we have considered.

At first I thought that I would, for the purposes of this trial, hold that the defendant was liable if the locomotive boiler was not in a condition to bear the strain of the steam

pressure — 133 pounds to the square inch — which the deceased and Smith were directed to put upon it in setting the safety-valve, and if the jury found against the defendant upon such an instruction, grant a new trial, if, upon further consideration, my present views of the law remained unchanged. Reflection, however, satisfied me that this course would be unjust to the plaintiff, because the court above while differing from me upon the ground upon which the new trial was granted, might still affirm the order for some other reason and the case might come back again for trial without the point which has been discussed, settled beyond review.

The plaintiff is entitled to a ruling which will enable her to present distinctly the question which is now decided, and if necessary present the same to the court of last resort unembarrassed by any other difficulty. The nonsuit is, therefore, granted for the sole and only reason that the defendant is not, as I think, responsible to the plaintiff for the acts of other servants in the same department with him, who either failed to put the boiler in a condition of repair sufficient to sustain the pressure of steam which the deceased, intestate, was ordered to apply, or omitted in the act of repair, including that of the setting of the valve, anything which should have been done to render the work upon which the deceased was engaged at the time of the accident as safe as the nature of the service would permit.