PESCHEL vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

*October 15, 1884 — March 3, 1885.*

MASTER AND SERVANT: NEGLIGENCE. *(1) Injury to servant: Defective machinery. (2) Negligence of fellow-servant: Foreman.*

1. The plaintiff, a mason employed with other masons, carpenters, and section men in the erection of a water-tank and wind-mill for the defendant railroad company, was injured by the falling of a portion of the frame-work for the wind-mill which he was assisting to raise. The apparatus for raising such frame-work consisted of a windlass or crab, tackle blocks, ropes, the water-tank itself, and an anchor post set in the ground about sixty feet distant, all of which had been placed in position and adjusted under the direction of the foreman. The fall of the frame-work was caused by the giving way of the anchor post, which had not been set in the ground to a sufficient depth. *Held*, that the whole apparatus for hoisting could not be considered as a single machine which the defendant was bound to furnish adjusted and in position to do the work, but the placing and adjustment of the detached appliances

---

[1] "An act to provide for the improvement of the Fox and Wisconsin rivers and connecting the same by a canal." Laws of 1848, p. 53.

Peschel vs. The Chicago, Milwaukee & St. Paul R'y Co.

were a part of the work to be done. The injury was caused, therefore, not by any failure of the defendant to furnish proper and safe machinery or appliances, but by the negligence of the foreman in the management of such appliances. [TAYLOR, J., dissenting, is of the opinion that the liability of a master to his servant for injuries caused by his neglect in furnishing safe and suitable machinery for doing the work, or with which the servant may come in contact in doing the work, is the same whether the machinery be made and put in shape for doing the work in the machine shop of the master or upon the ground where it is to be used by the servant. In either case the master is not liable for an injury to a servant which happens *while he is employed in the construction of the machine*, through the negligence of a fellow-servant employed in the same work; but if the servant is injured while using the machine *after its construction is completed*, by reason of any negligence in its construction of which he was himself not guilty and of which he had no knowledge, the master is liable.]

2. Such foreman had no general authority to employ or discharge the men under him, but was subordinate to a master carpenter who had that authority and who had charge and control of the different gangs of men working for the company, and gave directions to the foreman as to what they were to do. *Held*, that the foreman was a fellow-servant of the plaintiff engaged in a common employment, and that the company was therefore not liable for the injury.

APPEAL from the Circuit Court for *Jefferson* County.

Action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant and its agent and foreman, one Brooks. The facts as they were shown by the evidence and found by the jury will sufficiently appear from the opinion. In addition to a special verdict, the jury found generally in favor of the plaintiff and assessed his damages at $10,500. A motion for a new trial was denied, and from the judgment entered on the verdict the defendant appealed.

For the appellant there was a brief by *John W. Cary* and *D. S. Wegg*, and oral argument by *Mr. Wegg*.

*Harlow Pease*, for the respondent.

Peschel vs. The Chicago, Milwaukee & St. Paul R'y Co.

The following opinions were filed November 6, 1884:

COLE, C. J.   The learned counsel on both sides concede that this court, in repeated decisions, has decisively settled these propositions of law: (1) That it is a duty which the master owes his servant to furnish such servant with reasonably suitable and safe machinery, means, and appliances for doing the work which the servant is required to do, as well as a reasonably safe working place; that this duty being one which the master is positively bound to perform, in the first instance, he cannot be excused from its performance by intrusting it to an agent clothed with the power and charged with the duty to make performance for him, but who neglects to discharge that duty.   The master is under obligation also to use due diligence in keeping the machinery furnished in proper repair, and to provide competent and skilful fellow-servants to aid in the performance of the work required to be done.   Where an agent is charged by the master with the duty of supplying suitable and safe machinery and appliances in the first instance, and of keeping them in repair, also a safe working place, such agent is not to be regarded as a fellow-servant of those who are engaged in operating the machinery and in doing the work, for *pro hac vice* the agent represents the master in that regard, and is charged with the master's duty.   (2) If the master furnishes the servant with adequate machinery, means, and appliances, and a safe working place; uses reasonable care in keeping them in order and proper repair; provides suitable fellow-servants,— then he is not responsible to one servant for the negligence of another servant in the management and use of the machinery and appliances furnished for carrying on and performing his work. · If an injury then results to one servant through the negligence of a fellow-servant while doing the work, this is deemed a risk which is incident to the employment, and the master is not liable

for such negligence. The decisions of this court furnish many illustrations of the application of these propositions of law under a great variety of circumstances.

Now, how do these principles of law bear upon and affect the main question which is raised upon this record? It appears from the evidence that the defendant company was engaged in August, 1882, in building a water-tank and windmill for the use of its road at Platteville, Wisconsin. This department of work was under the supervision of Amos Bennett, master carpenter, whose headquarters were at Watertown, who had charge of about 900 miles of road and from sixteen to eighteen gangs of men, each gang under a foreman, distributed over the road in Bennett's charge. Bennett prepared plans for the work to be done, made estimates of and supplied all material and appliances, and forwarded them to the proper place. In this case the men detailed to do the work consisted of a foreman, Brooks, a gang of carpenters and masons and section-men. The plaintiff was a mason in the employ of the defendant, and was directed to go to Platteville and do whatever Brooks told him to do. This was in the line of plaintiff's employment, and he aided the men as he was directed by the foreman, Brooks, who had control of the work and of the entire gang of men. The water-tank consisted of a large tub, which was supported by upright timbers resting on stone walls or piers. The windmill was to be mounted on a high frame-work, which consisted of four posts about forty feet high, held together by cross-girths, and set upon a stone wall or piers near the tank. On the morning of the injury the work had so far progressed that the tank was in its place, and the plaintiff was on the top of it preparing to do some plastering. The bents for the frame-work of the windmill were ready to be raised to their proper position. The hoisting apparatus provided for raising the bents consisted of a windlass or crab, three tackle blocks, two ropes,

the tank itself, and an anchor-post set in the ground sixty feet distant from the tank, opposite to and in line with the bents. One tackle block was fastened to the upper end of the bent, one to the bed-timber at the lower end of the bent, and one to the top of the tank. One of the ropes used, called the anchor line, was fastened with one end to the tackle block on the tank, and then carried over and across the top of the tank and down to and fastened around the post set in the ground. There were two carpenters, and a man who was assisting the plaintiff, on the tank, when they were all ordered down by Brooks to aid in raising the bents.

On the special finding we must assume it as a verity in the case,— though the fact is denied by some of the defendant's witnesses, especially by Brooks himself,— that the plaintiff took his position to lift upon the frame where Brooks directed him to; and that he was not guilty of any negligence which contributed to the injury he received. After the bent had been raised a few feet, the anchor-post, which was sunk in the ground, to which the anchor-line was attached, suddenly pulled out of the ground, and the bent fell, crushing the plaintiff, who was lifting under it. The jury found that the post was set in the ground only three feet, and that, in view of the use to be made of it, it was not properly and safely set, but should have been set in solid soil to the depth of four feet in order to resist the force which was to be applied to it in raising the bents. They further found that Brooks was guilty of negligence or want of ordinary care in fixing and adjusting the machinery and appliances for raising the bents, including the setting of the anchor-post, a necessary part of such machinery and appliances.

Now, the contention of plaintiff's counsel is that the whole contrivance for raising the bents, including the anchor-post, constituted in fact and truth one machine by which power was to be applied and transmitted to produce the desired

effect.   He insists that the evidence shows — as the jury
found — that the proximate cause of the injury to the plaint-
iff was the defective, insufficient, and unsafe machinery
which the defendant, in the person of its foreman, Brooks,
provided for raising the bents.   Consequently, he claims that
the case comes fully within the principle of our decisions
which hold the master responsible for an injury occasioned
by unsafe and defective machinery furnished the servant to
do his work.   To this argument it is answered, on the other
side, that the defendant did furnish through its master
carpenter, Bennett, adequate materials of all kinds, stone
and wood, and skilful co-servants; that all the appliances,
ropes, pulleys, crab, and other tools and implements used
in and about the work were proper and perfect; that if the
anchor-post was insecurely set in the ground, this was not a
defect for which the company is liable.   Counsel says the
defendant was not bound to furnish all these apppliances
in an adjusted condition, and so placed as to be ready to
hoist the bents; that from the nature of the work to be
done it is absolutely impossible to do this; and it was usual
and necessary to furnish the appliances detached, to be
placed in their proper position afterwards by the men
themselves.   He says when the defendant had furnished
proper appliances so detached it had fulfilled its duty to the
plaintiff.   It then became a part of the contract of service
for the men who were to use the machinery to take it in its
detached condition and adjust it for such use.   The work of
the servants in adjusting the detached machinery for use
was a common employment which they were hired to do
and for which they were paid.   Therefore, he says, if Brooks,
in placing the anchor-post in the ground, was guilty of neg-
ligence, the defendant is not liable for that negligent act.

I see no escape from this reasoning, which appears logical
and sound.   It seems to me the error in the argument on
the other side is in assuming that the defendant was under

obligation to furnish the machinery and appliances for rais-
ing the bents, including the anchor-post, ready for use.   Did
the law impose upon the defendant that duty?   "Whether
a particular structure or appliance is one for which the
master is responsible to his servant may depend upon cir-
cumstances, including the nature and scope of the employ-
ment of those engaged in its preparation and use.   It may
depend upon the question whether the direction and charge
of the work is confided to the workmen or some of them,
or retained by the employer, or left unprovided for.   If the
employer directs his workmen to do certain work, leaving
it to them to provide the structures and appliances required.
for its prosecution, he may be responsible only for care in
selection of the men and material assigned for it.   But if he
simply employs them to work under his direction, giving
them no charge or responsibility in regard to the result to
be accomplished or the appliances to be used, that responsi-
bility remains with him.   The negligence of fellow-workmen,
for which the master is held to be exempt from responsi-
bility, is negligence in respect to that which the workmen
undertook, or were set to do."   WELLS, J., in *Arkerson v.
Dennison*, 117 Mass. 407–412.   So, for example, where the
master undertakes to build a staging, or have it built under
his direct personal supervision, he is liable for any defect or in-
sufficiency in the structure which due care on his part would
have avoided or made good.   This is the principle which
rules *Arkerson v. Dennison, supra; Behm v. Armour*, 58
Wis. 1; and *Manning v. Hogan*, 78 N. Y. 615.   These cases
affirm the doctrine, if the master has charge of the work
himself, he is guilty of negligence if defective appliances
are furnished or the structure is built in an unsafe manner,
though he had employed competent and suitable men to do
the work.   But where the master retains no supervision over
the erection of the staging, gives no directions in regard to
it, but provides suitable materials therefor, and intrusts the

Peschel vs. The Chicago, Milwaukee & St. Paul R'y Co.

duty of its erection to skilful workmen, he is not liable to one of the workmen for injuries resulting from the falling of the staging, though it was insufficiently built. *Kelley v. Norcross*, 121 Mass. 508; *Colton v. Richards*, 123 Mass. 484; *Killea v. Faxon*, 125 Mass. 485; *Armour v. Hahn*, 111 U. S. 313. The negligence in such a case is that of a fellow-servant, for which the master is not liable.

Here the stress of the argument is to bring the case within the rule which charges the master with the duty of supplying the servant with reasonably safe and suitable machinery and appliances to do his work. But, as I have said, I see no sufficient reason for saying the defendant was under obligation to furnish the men employed to erect the water-tank and windmill with a machine or instrumentality for raising the bents in a complete condition ready for use. There is no claim that the materials and appliances provided were not suitable and sufficient for the purpose intended. They were in a detached condition, and necessarily had to be adjusted on the ground; but the defendant did not contract with the plaintiff that these various appliances should be adjusted and put in order fit for use before he went to work. On the contrary, it was what the foreman, Brooks, with his gang of men, including the plaintiff, was employed to do, to take the materials of stone and wood, and all other appliances, and build the piers, construct the tank, frame the bents, adjust the machinery, and hoist the bents to their proper position. All this labor was necessarily involved in what they undertook to do and were paid for doing. It is unsound reasoning to compare this hoisting apparatus to a steam-engine, a railroad car, or to some machine which is all adjusted so that its sufficiency can be ascertained before the servant is called upon to use it. Here the materials had to be prepared and put together, frames made, and hoisting apparatus adjusted — which included the setting of the anchor-post — by the men themselves; and, to use the forci-

ble and pertinent language of defendant's attorneys on this point, if placing the post in the ground, in this particular case, was a duty which the master owed to the servant, then in doing work of this kind the rule as to non-liability for the negligent acts of fellow-servants would be practically nullified. If in the adjustment of this machinery a pulley, although perfect in itself, had been improperly placed or secured; if the anchor-rope, although proper and sufficient in itself, had been insecurely tied to the post and slipped therefrom; if one of the men, furnished with a proper crowbar, had negligently held it at the foot of the bent; if the frame-work, made by the men themselves, in the shape of timbers underneath the bents, and upon which they rested, had been improperly made,— the logic of the position of plaintiff's counsel would make the master liable in all the cases supposed for an injury caused by such negligence of a fellow-servant. This is, indeed, extending the liability of the master further than the adjudications of this court have carried it, and further than the law will warrant.

The cases of *Brabbits v. C. & N. W. R'y Co.* 38 Wis. 289; *Smith v. C., M. & St. P. R'y Co.* 42 Wis. 520; *Dorsey v. P. & C. Const. Co.* id. 585; *Wedgwood v. C. & N. W. R'y Co.* 44 Wis. 44; *Stetler v. C. & N. W. R'y Co.* 46 Wis. 497; *S. C.* 49 Wis. 609; *Bessex v. C. & N. W. R'y Co.* 45 Wis. 477; *Hulehan v. G. B., W. & St. P. R'y Co.* 58 Wis. 319, hold the corporation liable where it has not provided for the servant a safe working place or machinery, or has failed to use due diligence in keeping its track, locomotives, or cars in repair. The principle of these decisions has no decisive application to the case at bar. They stand essentially upon the same ground or principle as *Ford v. Fitchburg R. R. Co.* 110 Mass. 240; *Holden v. Fitchburg R. R. Co.* 129 Mass. 268; *Hough v. Railway Co.* 100 U. S. 213; *Davis v. Cent. Vt. R. R. Co.* 55 Vt. 84; *Baker v. A. V. R'y Co.* 95 Pa. St. 211, and cases of that character. But a comparison between the

materials and appliances provided for the servants in this case in their detached condition and a locomotive, car, or some piece of machinery complete and ready for use, fails, because here it was the duty of the foreman and of his men to take the materials and appliances provided, properly frame, use, and adjust them so as to erect the tank and wind-mill. The accomplishment of this work, of course, included the labor of raising the bents to their position. If Brooks, or any of his men, in using the means placed in their hands for the performance of their work, used them improperly, or were guilty of negligence in any way in the scope of their employment, the defendant cannot be held responsible for it. The case of *Whitwam v. W. & M. R. R. Co.* 58 Wis. 408, resembles this in some of its features. There the draw-bar was too short to enable the car to be safely coupled to or detached from the engine. That was the only defect complained of. It did not appear from the complaint where and by whom this coupling was done, but the inference was that it was done by some servant of the defendant who made use of a wrong draw-bar. It was held that the defendant was not liable for an injury to the plaintiff resulting from the use of an improper draw-bar. This case is distinguishable from *Ellis v. N. Y., L. E. & W. R. R. Co.* 95 N. Y. 546, where an injury to an employee was caused partly by the negligence of another employee and partly by the failure of the company to provide suitable apparatus. The cars coupled together were not of even height, so as to bring the buffers upon them together. It was held that it was a duty the defendant owed its employees to provide cars with buffers appropriately placed. It is obvious that as the buffers were placed on the cars no degree of care on the part of the servant in coupling them could possibly make them meet in case of collision.

In *Schulz v. C., M. & St. P. R'y Co.* 40 Wis. 589; *S. C.* 48 Wis. 375, the pile-driver was in a dangerous condition, to

the knowledge of the foreman whose duty it was to repair it. The case falls within the rule that the foreman was charged with the master's duty to the servant, and was bound to use due care to keep the pile-driver in order, and the master was responsible for the foreman's negligence in not doing so. *Kansas Pac. R'y Co. v. Little*, 19 Kan. 267; *Kain v. Smith*, 89 N. Y. 376, are practically ruled by the same principle of law. But it would be unprofitable to multiply authorities upon this point.

Therefore, in the light of all the authorities to which our attention was called, we fail to perceive any good ground for holding the defendant responsible for the negligence of Brooks in fixing and adjusting the machinery and appliances for raising the bents, including the setting of the anchor-post. From the necessity of the case these matters had to be intrusted to Brooks and the men under him. It was left to them to provide the object to which the anchor-line should be attached — whether a tree, or post, or something else — and to adjust the machinery generally. A post was selected which was sufficient to resist the force to be applied in raising the bents if it had been properly set in the ground. But if there was any negligence in setting it, or in fastening the anchor-rope to it, or in managing and using the hoisting apparatus, such acts of negligence stand upon the same ground. If the defendant is liable for the negligence of Brooks in doing any one of these things, it would be liable for his carelessness in doing any one of the others.

But it is claimed that, as to the plaintiff, Brooks was a superior servant, or so represented the company in doing the work as to make it liable for his negligent acts. There are surely cases which hold that a servant may recover in an action against the master for an injury occasioned by the negligence of another servant when the latter is engaged in a different or distinct branch or department of service. But it seems to us that Brooks and the men under him must be

regarded as fellow-servants engaged in the same common work or employment. This is what all the evidence in the case clearly shows. The facts bring the case fully within the rule laid down on this subject in *Cooper v. M. & P. du C. R'y Co.* 23 Wis. 668; *Howland v. M., L. S. & W. R'y Co.* 54 Wis. 226; *Hoth v. Peters*, 55 Wis. 405; *Heine v. C. & N. W. R'y Co.* 58 Wis. 525; *Pease v. C. & N. W. R'y Co.* 61 Wis. 163. See, also, Wood on Mast. & Serv. § 435, and cases cited in notes. It is true, Brooks had charge of this work of erecting the tank and windmill. In certain cases it appears he was authorized to discharge a man under him who did not work to suit him and hire another in his place. But he had no general authority to hire and dis-discharge the men under him. This authority was given to the master carpenter, Bennett, who had charge and control of the different gangs of men, and gave directions to the foreman as to what they were to do. We think Brooks and his entire gang were fellow-servants, within the strict meaning of the rule of law. They were certainly all subject to the control and direction of the same master, and were engaged to do the same work. In the *Howland Case*, a shoveler on a train which was employed in removing snow from the track and the conductor of such train were held to be fellow-servants engaged in the same service. So, in the *Heine Case*, the conductor and men engaged in "surfacing track" were regarded as fellow-servants, within the rule which exempts the master from liability for an injury to one of the men occasioned through negligence of the conductor. The same rule was applied in the *Pease Case*, where a brakeman was injured by the careless act of the conductor of a passenger train. Mr. Wood says it is subjection to the same general control, coupled with an engagement in the same common pursuit, that affords the true test of determining whether persons are fellow-servants. Wood on Mast. & Serv. § 435.

It is true, the plaintiff was a mason, but it was his duty to assist Brooks, the foreman, and the other men in erecting the tank and windmill. The accomplishment of that work required that masons, carpenters, and section-men should be employed and co-operate. The work could not be performed without the employment of all these men, who had to assist in the prosecution of the business, though they were of different trades. Therefore, our conclusion from the testimony is that the plaintiff must be regarded as a co-servant of Brooks and of each of the men engaged in that work. He having been injured through the negligence of Brooks, upon a well-settled principle the defendant is exempt from responsibility for it. For it is the common case where the servant is deemed to assume the risks incident to the employment when he entered the service, so far as the master is concerned.

Without specially noticing the other errors, we think the motion for a new trial should have been granted.

TAYLOR, J.    The plaintiff was injured while in the employ of the railroad company, as a mason, assisting in the construction of a water-tank and windmill tower on the line of the company's road. He was employed to do the mason-work on the foundations of the water-tank and tower, and other work about such structures in his line of business, and generally to do such work as he might be called upon to do by the foreman in charge of the work. At the time he was injured he was, by the request and direction of the foreman in charge of the construction of said tank and tower, assisting in raising the frame-work of the tower. In order to raise this frame-work an apparatus was used, consisting of blocks and tackle, and a crab or windlass. In order to hold the main block in place, a rope attached to it was passed over the top of the tank, which had been put in place, and was fastened to a post set in the ground, some distance be-

yond the tank, by the direction of the foreman. The tackle was attached to a part of the frame-work to be raised, and the power for raising the same was produced by working a crab or windlass to which the fall was attached. In starting the frame-work, it is alleged by the plaintiff that the power applied at the windlass was insufficient for the purpose, and he was called by the foreman from his employment as a mason to help in raising the frame; that, for the purpose of assisting, he placed his shoulder under the frame-work to lift to advantage, and that while he was so lifting, and after the frame had been raised a few feet from the ground, the post placed in the ground beyond the tank, to which the rope was attached which held the main block in position, was pulled out of the ground, and the frame fell upon him and caused the injury for which he claims damages. The evidence very clearly establishes the fact that the post was not set in the ground a sufficient depth to sustain the strain which was placed upon it in attempting to raise the frame. The evidence also shows that the foreman directed it to be set in the ground four feet; that it was, in fact, set in but three feet. The foreman gave proper orders for setting the same, but did not see that his order was properly executed.

The question which is decisive of the merits of this action is this: Is the defendant railroad company liable to the plaintiff for the negligence of the foreman, or other person, who set the post which gave way and caused the injury? On the part of the learned counsel who represent the company it is insisted that the company is not responsible for such neglect, and that the case comes within the well-established rule that the master is not responsible for an injury caused by the negligence of a co-employee, and that the foreman and the plaintiff were co-employees, within this rule. With the position of the learned counsel that the foreman and plaintiff are co-employees I do not disagree; but I disagree with them that the negligence of this co-

employee does not render the company liable under the facts of this case. In my view of the case, it is *within the rule* which holds the master liable for the neglect of its servants in not providing suitable and safe appliances, apparatus, machinery, or tools for doing the work, and which the other servants of the company are called upon to use in doing such work.

The learned counsel for the company do not deny but that the agency used in attempting to hoist the frame of the tower was a machine, within the meaning of the law, but they claim that so far as the ropes, blocks, and windlass which, when put in position, constituted the hoisting-machine are concerned, the evidence shows that they were all safe and sufficient, and that the defect in the apparatus or machine, when ready for use, consisted in the negligent manner in which it was adjusted and put together for use; and for such negligence it is insisted the company is not liable. If I understand the argument of the learned counsel it is this: that when a set of men are employed to do a certain work, such as the erection of a building, or a water-tank and windmill, as in the case at bar, and in the performance of such work it is necessary to use machinery or other appliances of any kind, and when the parties so employed understand that it is a part of their work to put together such machinery or other appliances on the ground where the work is to be done for use by them, then the master has performed his full duty when he has delivered to them such machinery in a separated and detached condition, such detached parts being in a safe condition and, when properly put together and adjusted, safe and suitable for the performance of the work to be done; and that any negligence in putting such machinery together and adjusting it on the ground for the performance of its work is not to be attributed to the master, but is the negligence of a co-employee, for which the master is not liable.

To adopt this rule, it appears to me, is in conflict with the spirit if not with the letter of the doctrine well established in this court, as well as in the courts of other states, and of the supreme court of the United States, viz.: "That the master owes an absolute duty to his employees to furnish them with reasonably suitable and safe machinery and other appliances with which they are required to do their work, or with which they may come in contact while doing their work; and this duty being one which the company is bound to perform, it cannot be excused from its performance by intrusting it to an employee or officer who may neglect to perform such duty." This doctrine has been repeatedly announced in this court. *Brabbits v. C. & N. W. R'y Co.* 38 Wis. 289; *Smith v. C., M. & St. P. R'y Co.* 42 Wis. 520; *Wedgwood v. C. & N. W. R'y Co.* 41 Wis. 478; *Bessex v. C. & N. W. R'y Co.* 45 Wis. 477, 481; *Behm v. Armour,* 58 Wis. 1; *Heine v. C. & N. W. R'y Co.* id. 525, 531. The same doctrine is announced in the following cases: *Bridges v. St. L., I. M. & S. R. R. Co.* 6 Mo. App. 389; *Porter v. H. & St. J. R. R. Co.* 60 Mo. 160; *Long v. Pacific R. R. Co.* 65 Mo. 225; *Baker v. W. & A. R. R. Co.* 68 Ga. 699; *L. S. & M. S. R'y Co. v. Fitzpatrick,* 31 Ohio St. 479; *Guthrie v. L. & N. R. R. Co.* 11 Lea (Tenn.), 372; *Fuller v. Jewett,* 80 N. Y. 46; *Drymala v. Thompson,* 26 Minn. 40; *Flike v. B. & A. R. R. Co.* 53 N. Y. 519; *King v. N. Y. C. & H. R. R. R. Co.* 72 N. Y. 607; *Cone v. D. L. & W. R. R. Co.* 81 N. Y. 207; *C. & N. W. R'y Co. v. Jackson,* 55 Ill. 492; *T. W. & W. R'y Co. v. Ingraham,* 77 Ill. 309; *Kain v. Smith,* 80 N. Y. 458; *G., H. & S. A. R. R. Co. v. Delahunty,* 53 Tex. 206; *Gates v. S. M. R. R. Co.* 2 Am. & Eng. R'y Cas. 237; *Herbert v. N. P. R. Co.* 8 Am. & Eng. R'y Cas. 85; *L. & N. R. R. Co. v. Orr,* id. 94; *Hough v. Railway Co.* 100 U. S. 213; *King v. O. & M. R'y Co.* 11 Biss. 362; *O'Neil v. St. L., I. M. & S. R'y Co.* 3 McCrary, 432; *Paulmier v. Erie R. R. Co.* 34 N. J. Law, 151. Many other

cases might be cited to the same point; and few, if any, well-considered cases hold a contrary doctrine.

This court has also held that it is the further duty of the master to keep the machinery, apparatus, and other appliances to be used by his employees in a reasonably safe and proper condition for use, and that the duty to do so cannot be delegated to any agent, employee, or officer, so as to relieve himself of such duty. *Schultz v. C., M. & St. P. R'y Co.* 48 Wis. 375, 381; *Wedgwood v. C. & N. W. R'y Co.* 41 Wis. 478; *Brabbits v. C. & N. W. R'y Co.* 38 Wis. 289. In this respect, the rule adopted by this court differs from that adopted in England and in Massachusetts and some other states, but is in accord with the decisions of the court of appeals of New York, most of the other states, and of the supreme court of the United States. · See cases above cited, and *Davis v. C. V. R. R. Co.* 55 Vt. 84, 93; Wharton on Agency, § 232; Pierce on Railroads, 370; *Crispin v. Babbitt*, 81 N. Y. 516; *Dana v. N. Y. C. & H. R. R. R. Co.* 92 N. Y. 639. The cases cited by the learned counsel for the appellant to sustain his proposition that the master is not liable for the negligence of one of his employees or servants, whose duty it is to assist in adjusting and putting in working order a machine or other appliance which is to be used in doing his work, are all either English or Massachusetts cases, or of courts which have adopted the rule laid down by those courts, and are all in conflict with the decisions of this court, and with the decisions of the courts which sustain the rule laid down by this court, viz.: *Johnson v. Boston Tow-boat Co.* 135 Mass. 209; *Collins v. St. P. & S. C. R. R. Co.* 30 Minn. 31; *McAndrews v. Burns*, 39 N. J. Law, 117; *Wilson v. Merry*, L. R. 1 H. L. Sc. App. Cas. 329; *Feltham v. England*, L. R. 2 Q. B. 33; *Wigmore v. Jay*, 5 Exch. Rep. 354; *Tarrant v. Webb*, 86 Eng. C. L. 796; *Searle v. Lindsay*, 103 Eng. C. L. 429; *Wonder v. B. & O. R. R. Co.* 32 Md. 414. These are the only cases cited by the

learned counsel for the appellant where the negligence of a co-employee in the construction or keeping in repair of a machine or appliance, which resulted in an injury to some other employee, came in controversy, and in which it was held that the master was not liable to the party injured for such negligence.

The distinction between the cases cited above by the learned counsel for the appellant and the rule established by this court is to me quite apparent.   The English cases, the Massachusetts case, and the cases from New Jersey and Maryland all go upon the ground, if carried out logically, that the master is not bound absolutely to furnish his employees with reasonably safe and perfect machinery or appliances with which to do their work, but that his duty ends when he has provided suitable material out of which the machinery or appliances may be constructed, and then employs competent persons to construct and keep them in repair, and that negligence in the construction and keeping in repair in such case is the negligence of a co-employee, for which the master is not liable; whereas this court and those which adopt a like rule hold that the duty of the master does not cease until the machinery or appliances to be used by his employee are put in a safe condition for use, and then constantly kept in such safe condition, and that the employee whose duty it is to see that such machines and appliances are properly constructed and put in safe condition for use, and to keep them in such condition, in this respect represents the master, and his negligence in the performance of his duty is the neglect of the master, for which the master is liable, although such employee may in other respects be the co-employee of the person injured by such negligence.

The line of distinction, in my opinion, is this: The master is liable for neglect in furnishing reasonably safe machinery and appliances for the use of his employees, and to keep them in such safe condition; but he is not liable for the neg-

ligent use of such machinery or appliances by his employees, from which negligent use an injury happens to a co-employee. *Shanny v. Androscoggin Mills,* 66 Me. 420, 426. " To provide machinery and keep it in repair, and to use it for the purposes for which it was intended, are very distinct matters. They are not employments in the same common business tending to the same common result. The one can properly be said to begin only where the other ends." The case of *Morgan v. Vale of N. R'y Co.* 5 Best & S. 570, and *Bartonshill Coal Co. v. Reid,* 3 Macq. 266, are instances of the negligent use of machinery or appliances resulting in an injury to an employee; and it was rightly held, within the rule established by this court, that the injured party could not recover for such negligence of a co-employee. The distinction between the rule established by the decisions of this court and that established by the English and other cases quoted by the counsel for the appellant is pointed out by the learned judge who delivered the opinion in the case of *Davis v. Cent. Vt. R. R. Co.* 55 Vt. 91, 92. After quoting from the opinion of the Lord Chancellor in the case of *Wilson v. Merry, supra,* he says: " This view places the liability of the master upon the duty he owes to the workmen arising from their relations to each other. It implies that if the master personally attempts to discharge that part of the work which the relation devolves upon him, and his negligence therein causes injury to the workman, the master is liable therefor. The question is naturally suggested, why should he not also be liable for the negligence of the other servant whom he has appointed to discharge the same duty in his stead, although he has exercised due care to select a person competent and skilful? Is such an agent or servant, while performing the duty cast by the relation of the master, a fellow-workman with the master's servant in the employment, in such a sense that the latter cannot and ought not to recover of the master for injuries sustained through the negligence of the former?

If so, the master who performs his part of the duty, as this defendant and all corporations must, by agents and servants, secures an immunity from liability which the master who personally enters the service to manage and direct the performance of the work does not enjoy."

The same argument is perhaps more clearly and forcibly stated by this court in the case of *Brabbits v. C. & N. W. R'y Co.* 38 Wis. 298. The duty of the master to provide and keep in repair the machinery and appliances which his servants are called upon to use in doing his work cannot be successfully controverted in this court, nor do the learned counsel for the appellants, in their oral argument, ask this court to review or overrule its well-established rule in that respect, though most of the cases cited in their printed brief hold a different rule; but they seek to distinguish this case from the almost numberless cases sustaining the rule of this court by urging that in this case the persons who were employed to assist in building the tank and windmill were also employed to assist in constructing, or at least in setting up and putting in position for work, the hoisting apparatus or machinery which they were to use in raising the tower. To my mind this cannot alter the liability of the master, except, perhaps, as to such of the servants as were guilty of negligence in assisting in putting the hoisting-machine together or in place.

It is well known that the setting up or putting together the parts of a machine so as to constitute a working machine is a work which requires almost if not quite as much skill, judgment, and knowledge of mechanical forces as the making of the different parts; and the ordinary laborer or workman is not expected to have the knowledge necessary for such work. It must be admitted that the setting of the post which was to sustain all the force necessary to raise the heavy timbers of the tower, by means of blocks, tackle, and crab, was a matter which required expert knowledge. It required a knowl-

edge of the weight to be raised, the direction in which the force was to be applied in raising the timbers, and all other circumstances which might affect the power to be applied. The foreman was the representative of the company to see that this work was properly done. He is supposed to have the necessary knowledge and skill to do that work well. Supposing the railroad company had intrusted that work to a person having no mechanical experience whatever, and he had placed the post as it was in this case, and it had given way when the weight was put upon it. This court would not have hesitated to declare that the company was negligent in intrusting the work to an incompetent man. How, under the rule of this court, can the company excuse itself if its agent who is competent to do the work intrusts the doing of it to an incompetent person, who fails for want of the knowledge or skill to do it well? If he directed it to be set by an incompetent person, without giving orders how it should be set, and such incompetent person did the work imperfectly, from want of skill and judgment, then even such person, much less the other employees who had no hand in doing the work, would be guilty of no culpable negligence, and if injury happened to him from his unskilful work, the real culpability would rest upon the foreman who directed him to do a work he was incompetent to perform and without instructing him how to perform it. The case would come within the rule which requires the master, when he set the servant who is unskilled in the business at work in a dangerous place, to inform him of the dangers attending his work and give him the proper instructions how to avoid such danger. If the foreman gave the person or persons doing the work the proper instructions, and they failed to follow such instructions, and an injury was sustained by any of those employed in such work, by reason of their neglect to follow instructions, they could not recover, because their negligence contributed to their injury; but this would not

apply to the other workmen who were not engaged in setting the work.

The foreman did not perform his whole duty by directing the work to be done by others, although he gave the proper instructions. It was his further duty to inspect the work while it was being done, to see that it was properly done and in a safe condition to be used for the purposes for which it was intended; and when the machine was put in use to assist in doing their work, the employees of the company, except those only who were guilty of culpable negligence in preparing the machine for use, had the right to suppose that the company had used due care in preparing the same for use.

The case of *Murphy v. B. & A. R. R. Co.* 59 How. Pr. 197, if not in all respects like the case at bar, points out the distinction between the rights of employees who are called upon to use a machine, as against the master, and the rights of those who construct or repair the same for the master. The head-note to the case is as follows: "Employers who construct or repair machines are not liable to their employees who are engaged in the construction or repair of a machine upon which they are ordered to make certain repairs, provided some other workman in the same shop has so carelessly done his prior part of the work of repair as to leave the machine unfit to have any additional work done on it, and in consequence thereof the employee who undertakes to do the last work is injured." WESTBROOK, J., in his opinion in the case, p. 200, says: "The general rule undoubtedly is that an employer who furnishes the machine for his servant to work with is bound to provide one safe for that purpose; but when a machine which is safe has been furnished, the men who operate it take upon themselves the risk of their fellow-workmen's carelessness. When, however, an accident occurs, not in the operation but in the construction or repair of a machine for operation, in the doing of which the

party, a servant, is injured, such accident being caused by the negligence of another servant, who had done a previous and different part of such construction or repair, is the master then liable in damages for the injury?" And this last question was answered in the negative by the court.

The case at bar would be like that just cited, had the plaintiff's employment made it a part of his duty to assist in setting up the hoisting-machine, and while employed in setting it up and preparing it for use he had received an injury from the carelessness of the foreman or some other persons who were assisting him in that work. The evidence in this case fails to show that the plaintiff was employed to assist in setting up the hoisting-machine, and shows very clearly that he was not called upon to assist in any manner in that work. He does not come within the letter or spirit of the rule laid down in the case cited. In principle it can make no difference as to the liability of the master to his servant for injuries caused by his neglect in furnishing safe and suitable machinery with which to do his work, or with which he may come in contact in doing such work, whether the machinery be made and put in shape for doing the work in the machine shops of the master or upon the ground where it is to be used by the servants. In either case, if an injury . happens to one whose duty it is and who is in fact aiding in the construction of the machine, from the neglect or carelessness of some other servant or employee who is employed with him in the same work, and while they are engaged in such work of construction, the master is not liable; but where some other servant or employee of the master is called upon to use the machine after its construction is completed, and he is injured by the negligence of those who constructed the same, in not constructing it in a safe and suitable manner, then it seems to me that the general rule applies and the master is liable for such injury. And I also think that one employed in helping to construct the machine, and who is

afterwards called upon to use it, may hold the master liable for an injury resulting from any neglect or carelessness in its construction of which he was himself not guilty, and of which he had no knowledge. The ground of the master's liability in the latter case, as well as in all other cases, rests upon the established rule that it is his duty to inspect and test the machine before it is put into use; and if he puts it into use without such inspection and test, he is liable for an injury resulting from any defects which might have been discovered thereby; and the person engaged in the construction of such machinery, who is not in fault himself and has no knowledge of any negligence of his co-employees in such work, has the same right as any other employee of the master, to demand of him that he shall do his duty in regard to making such inspection and tests before he shall be called upon to use the machine in doing other work for the master.

The case of *Manning v. Hogan*, 78 N. Y. 615, was the case of a defective scaffold. The building was a large public building, and the evidence showed that the putting up of scaffolds for such building was a work which required skilled labor or experts in that business, and it was held that the master was liable to one of his employees for an injury received from a defect in the scaffold, notwithstanding the master had furnished suitable materials for the construction thereof. The decision does not turn upon the point that the master himself was present directing the erection of the scaffold, as the facts stated show he was not; but upon the facts that the scaffold, under the evidence in that case, was a work that required skilled labor, the same as in making a machine or tool for the use of the employee, and that the persons who built the scaffold were not skilled in that business, and therefore the master was liable for the negligence of the co-employee engaged in the construction of the same.

Upon the merits of the case I think the plaintiff was entitled to recover, and the judgment should not be reversed.

Whether there were errors in the admission of evidence or in the rulings of the court, which would entitle the appellant to a reversal, I have not considered, as this court in its decision have not considered any other question than the one I have above discussed.

*By the Court.*— The judgment of the circuit court is reversed, and a new trial ordered.

A motion for a rehearing was denied March 3, 1885.